CHARLES S. MOORE, RELATOR, v. ENOCH L. JOHNSON, RESPONDENT.

Argued June 30, 1913—Decided September 9, 1913.

1. If a superficial interpretation of the terms of a legislative act leads to a result that is obviously subversive of the main object of the act and there is a permissible construction of the language employed that will effectuate such object, the latter will be deemed to be the expression of the legislative will.

2. The amendatory acts of April 2d, 1908 (*Pamph. L., p.* 60) and April 10th, 1908 (*Pamph. L., p.* 227) provide that wherever the population of any county bordering on the Atlantic ocean as ascertained by any state or federal census is more than fifty thousand and not more than sixty-five thousand the prosecutor of the pleas in such county shall receive an annual salary of four thousand dollars. *Held*, that upon a proper construction of these acts the prosecutor of the pleas in the county of Atlantic is entitled to the salary therein provided notwithstanding that the population of that county in the last census exceeds sixty-five thousand.

On application for *mandamus*.

Before Justices GARRISON, TRENCHARD and MINTURN.

For the relator, *Theodore W. Schimpf*.

For the respondent, *Enoch A. Higbee*.

The opinion of the court was delivered by

GARRISON, J. The relator asks that his compensation as prosecutor of the pleas in Atlantic county for the year commencing March 17th, 1913, be paid to him upon the basis of a salary of $4,000 per annum.

Since 1908 the compensation of the prosecutor of the pleas of Atlantic county has been fixed by law at $4,000 under the provisions of either of two amendments passed in that year. *Pamph. L.* 1908, *p.* 60; *Pamph. L.* 1908, *p.* 227.

Prior to 1908 the compensation of the prosecutors of the several counties was based solely upon population as shown by the latest census.  *Pamph. L.* 1906, *p.* 102.

By the census of 1905 Atlantic county had a population of fifty-nine thousand eight hundred and sixty-two which, under the act of 1906, fixed the compensation of its prosecutor at $1,500.

In 1908 the two amendments referred to were passed giving an increased compensation to prosecutors of the pleas in counties bordering on the Atlantic ocean, fixing such compensation at $4,000 wherever the population of any such county by the latest census was more than fifty thousand and not more than sixty-five thousand.

While general in form these amendments affected Atlantic county alone for by the census of 1905 Monmouth county had a population of eighty-seven thousand nine hundred and nineteen while that of Ocean and Cape May counties was twenty thousand eight hundred and eighty and seventeen thousand three hundred and ninety, respectively.

In 1910 as shown by the federal census the population of Atlantic county had risen to seventy-one thousand eight hundred and ninety-four, *i. e.,* beyond the sixty-five thousand mentioned in the acts of 1908, and this circumstance led the respondent to refuse to pay the relator's salary under the acts of 1908 upon the ground that those acts, on their face, no longer applied to the prosecutor of Atlantic county whose compensation, it is contended, must now be regulated by the general act of 1906, *i. e.,* must fall from $4,000 to $3,000 because of the increase of population.

The bare statement of the proposition that the legislature seriously enacted that $4,000 was the proper compensation of the prosecutor of the pleas for the work entailed by a seaside population barely exceeding fifty thousand, but that when such work should be increased nearly fifty per cent. the proper compensation would be $3,000, at once suggests that the language that is thus interpreted may be susceptible of a construction that avoids so absurd a result.

I am well aware that when the meaning of a statute is clear there is no authority in the judicial department to nullify such legislative action because of the absurd results it produces. *McGowan* v. *Metropolitan Life Ins. Co.,* 31 *Vroom* 198.

This, however, begs the question which is whether it is clear that the acts of 1908 have the absurd meaning ascribed to them, a question that goes not to the nullification of the action of the legislature, but to the construction of its language in which one element to be considered is the absurd result produced by its merely superficial interpretation.

It was of such a case that Mr. Justice Dixon, speaking for the Court of Errors and Appeals in *Winans* v. *Luppie,* 2 *Dick. Ch. Rep.* 302, said: "The spirit of our laws and the indubitable reason of this enactment do not admit of such a superficial interpretation."

The case cited must be read to appreciate the full force of the language quoted; the doctrine, however, is firmly established in our jurisprudence.

It is under this doctrine that statutes naming only "executors" are construed to include "administrators" (9 *Bac. Abr., tit. "Statutes" I.,* 6), and that a statute relating to "telegraph companies" is held to include "telephone companies." *Duke* v. *Central New Jersey Telephone Co.,* 24 *Vroom* 341.

In an early case (*Houget* v. *Wallace,* 4 *Dutch.* 523), this doctrine was applied and the authorities for it cited by Mr. Justice Whelpley (afterwards Chief Justice) who said: "By an equitable construction a case not within the letter of a statute is sometimes holden to be within its meaning because it is within the mischief for which a remedy is provided."

In the recent case of *State* v. *Aldermen,* 52 *Vroom* 549, the doctrine was re-examined in the Court of Errors and Appeals and applied to criminal procedure; and in the most recent case, viz., *Blanz* v. *Erie Railroad Co.,* 55 *Id.* 35, the word "mother" was, by a rational construction, read into a statute in order to effectuate the obvious purpose expressed in the Workmen's Compensation act.

Another phase of this doctrine is illustrated in the case of *East Orange* v. *Hussey,* 41 *Vroom* 244, the headnote of which is: "If, of two interpretations of the language of a statute, one leads to a result that exceeds the power of the legislature, the other will be deemed to be what the legislature intended."

The same canon applies where one interpretation leads to a palpable frustration of the legislative will.

Many other similar cases are collected in 6 *N. J. Dig.* 11592 *et seq.*

Guided by these rules of construction and bearing in mind the fundamental canon touching "the old law, the mischief and the remedy," it is not difficult to give to the statutes of 1908 a rational construction consistent with their obvious purpose. The old law, *i. e.,* that act of 1906, based the compensation of prosecutors solely upon population regardless of characteristics that increased the work of the criminal courts. Such a characteristic was possessed, in the judgment of the legislature, by counties in which seaside resorts were located, and rendered a compensation based solely upon population inadequate in such of those counties as had a population in excess of fifty thousand. To remedy this defect in the old law and to compensate the prosecutors in such counties for the work thus cast upon them the legislature, by the acts of 1908, determined that $4,000 would be the proper compensation. This much is clear. It is likewise clear that the legislature did not intend that the compensation of the prosecutor of Monmouth county which, under the act of 1906, was likewise $4,000, should be increased beyond that sum. It was necessary, therefore, to exclude Monmouth county from the operation of the acts of 1908 and this was done by the insertion in those acts of the sixty-five thousand population. This made the act applicable to Atlantic county alone as it was evidently intended that it should be. Whether or not this was commendable legislation is of no concern in the ascertainment of the will of the legislature as expressed by the insertion of a term in its enactments, which may fairly be

construed to relate to the inception of the remedial provision, which having once lawfully commenced to run would in the nature of things continue unless the population should fall below the prescribed minimum of fifty thousand. Thus regarded, the population of sixty-five thousand was the maximum for the inception of the statutory remedy and not a limit upon reaching which the remedial provision that had once attached should cease to operate. These terms are to be construed in the light of reason with reference to the subject-matter. It is as if cities having a population of between fifty thousand and sixty-five thousand were required to establish certain sanitary and police regulations, having reference to density of population, in which case no one would say that when the population had increased beyond sixty-five thousand, the sanitary measures thus established became unlawful. This construction receives additional support from the particle used which is "wherever" not "whenever;" the latter being the equivalent of "as long as" suggests a possible limitation, while the former, which is the equivalent of "as often as," implies in the context a single initiative.

The meaning I am suggesting is, therefore, within the language we are construing and is entirely consistent with the mischief the legislature felt called upon to cure and the remedy it was attempting to provide for that purpose.

The other interpretation is that for the increased work entailed by a population of fifty thousand, additional compensation was proper, but that for the increased work entailed by a population that exceeded sixty-five thousand a diminished compensation was proper.

It is so inconceivable that this was the legislative intent that under the doctrine stated the other construction must prevail, not because it is beyond the power of the legislature to enact inane laws and impose their enforcement upon the courts, but because the courts will not impute such a purpose to the legislature if its language is susceptible of a sane meaning in complete harmony with the clear aim and purpose of its enactment.

Such a result when reached by the application of established rules of construction is as far as possible removed from so-called "judicial legislation;" for the one is the judicial ascertainment of the meaning and scope of legislative action, while the other is the judicial addition to such action of a meaning and scope it does not possess.

We conclude that under the proper construction of the acts of 1908 the relator is entitled to be paid his compensation as prosecutor at the rate of $4,000 a year, and that to that end a peremptory writ of *mandamus* should issue which, however, as the action of the respondent was not unreasonable will be without the allowance of costs.