238 N.J. Super. 501 (1989)
570 A.2d 49
JAMES C. BRUCE, SR., INDIVIDUALLY, AND HELEN BRUCE, G/A/L, FOR THE MINOR CHILD, SHERRY L. BRUCE, PLAINTIFFS,
v.
JAMES P. MACLEAN FIRM AND AETNA CASUALTY & SURETY COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Cumberland County.
Decided January 30, 1989.
*503 Richard C. McCarthy, attorney for plaintiffs.
Brown & Connery, attorneys for defendant, James P. MacLean Firm (Warren W. Faulk).
Horn, Kaplan, Goldberg, Gorny & Daniels, attorneys for defendant, Aetna Casualty & Surety Company (William M. Honan).

OPINION
KLEINER, J.S.C.
The present case is before this Court on cross motions for summary judgment and raises issues concerning the duty of both the insurance carrier and the insurance agent to inform the insured of the availability of Uninsured/Underinsured ("UM/UIM") limits higher than the $15,000/30,000 statutory minimum.
Plaintiffs filed suit against their insurance carrier, Aetna Casualty & Surety Co., seeking reformation of their automobile insurance policy to provide UM/UIM coverage limits equal to their liability coverage. The plaintiffs also asserted negligence claims, seeking damages against their insurance agent, the James P. MacLean Firm.
On June 15, 1985, plaintiffs' daughter, Sherry Bruce, a minor, was seriously injured as a passenger in a one-car accident. The vehicle involved was owned and operated by Michael Hutchinson, who evidently lost control of his vehicle.
Hutchinson maintained insurance coverage with liability limits of $15,000/30,000. At the time of the accident, the plaintiff's insurance policy provided liability coverage of $50,000/100,000 limits and UM/UIM coverage with $15,000/30,000 limits. Thus, plaintiffs were unable to assert a UIM claim as *504 no differential existed between the liability limits of Hutchinson and the UM limits of the plaintiffs N.J.S.A. 17:28-1.1(b); Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App. Div. 1988); Tyler v. N.J.F.U.A., 228 N.J. Super. 463, 550 A.2d 168 (App.Div. 1988).
Plaintiffs first obtained automobile insurance from Aetna in April, 1975, through the James P. MacLean Firm. At that time, despite being fully apprised by the MacLean Firm of all the various available coverages, financial constraints limited the plaintiffs insurance selection to the minimum $15,000/30,000 liability and UM motorist coverage.
From April, 1975, until the present, plaintiffs have continuously had automobile insurance coverage through the defendant agency and the defendant insurance company.
In April, 1983, the liability limits of the plaintiffs' policy were increased to $50,000/100,000. The plaintiffs contend that they would have increased their UM[1] coverage from $15,000/30,000 to $50,000/100,000 limits prior to the accident had they been informed that such coverage existed. Plaintiffs charge both defendants with the failure to adequately provide plaintiffs with such information.

I.
In 1983 the Legislature enacted L. 1983, C. 65 and L. 1983, C. 362 which amended N.J.S.A. 17:28-1.1 to require that every automobile liability insurer offer its insured the option of purchasing UM and UIM motorist coverage to the limits of his/her liability coverage not to exceed $250,000/500,000. Prior to these amendments insurance companies were only required to provide optional UM motorist coverage in the aggregate amount of $15,000/30,000.
*505 N.J.S.A. 39:6A-23 as amended by P.L. 1983, c. 362 Sec. 17, and regulations promulgated pursuant thereto, N.J.A.C. 11:3-15.1, et seq., required all carriers to mail a written notice of available coverage, including coverage selection forms and a buyer's guide, to all insureds both new and old. No new policy could be issued on or after July 1, 1984 unless the application for the policy was accompanied by the requisite materials. With regard to automobile insurance policies in force on July 1, 1984, the named insured was to receive the requisite materials no later than May 15, 1984. Furthermore, any notice of renewal dated subsequent to July 1, 1984, was to be accompanied by a written notice.
The defendant, Aetna, argues that it fulfilled its duty to provide plaintiffs with notice of the available coverage because it properly mailed the requisite materials in compliance with statutory and regulatory provisions. Plaintiffs, however, claim that they never received the requisite materials from their insurer.
As a general rule, proof of mailing raises the presumption of receipt. Weathers v. Hartford Ins. Group, 77 N.J. 228, 390 A.2d 548 (1978); Cwiklinski v. Burton, 217 N.J. Super. 506, 526 A.2d 271 (App.Div. 1987); Borgia v. Board of Review, 21 N.J. Super. 462, 91 A.2d 441 (App.Div. 1952); Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 518 A.2d 758 (App.Div. 1986). To overcome an assertion of nonreceipt, proofs submitted in support of the fact of mailing must be of sufficient strength to give rise to a presumption of mailing. To conclusively establish the fact of mailing, there must be evidence of custom with respect to the mailing coupled with reliable testimony of the person or persons whose duty it is to perform or carry out the custom. This testimony must be sufficient to constitute proof that the custom in a particular case was followed. Cwiklinski, 217 N.J. Super. at 510-511, 526 A.2d 271; Borgia, 21 N.J. Super. at 467-468, 91 A.2d 441.
*506 Plaintiffs argue that "Proof of mass mailing" as established by evidence that custom of mass mailing was followed is insufficient. Plaintiffs contend that insurance carriers under these circumstances, have an obligation to maintain and provide individual proof of mailing. This assertion requires this Court to analyze to what extent do applicable statutes and regulations impose a duty on the carrier to prove mailing of the notice.
Pursuant to N.J.A.C. 11:3-15.8, the insurer's obligation is limited to mailing the buyer's guide and written notice including the selection form. The insurer is directed to deem an insured's failure to return a properly executed selection form as a decision on the insured's part to retain current coverage without change. There is no proof of mailing requirement set out in the administrative regulations. Indeed, neither N.J.S.A. 39:6A-23, N.J.S.A. 17:28-1.1 nor N.J.A.C. 11:3-15.1 et seq. contain a requirement of proof of mailing.
Plaintiff argues that because the applicable statutes or regulations do not appear to impose a duty upon the insurance carrier to provide individual proof of mailing, the Court should look to N.J.S.A. 17:29C-10 for guidance. N.J.S.A. 17:29C-10 provides that to be effective, a notice to cancel or not renew an insurance policy must be sent by certified mail or by regular mail provided that the insurer obtains a date-stamped proof of mailing from the post office.
The "Notice of Coverage" provisions, however, are distinguishable from the "Notice of Cancellation" or "Notice Not to Renew" provisions. As a matter of public policy, the latter provisions provide a heightened proof of mailing requirement due to the terminating effect upon the insured's coverage. The legislature presumably did not intend to expand the "Notice of Coverage" provisions to require anything more than mass mailing, as the purpose of the underlying statute is to afford the insured an option to purchase additional coverage.
It must be further noted that the May 15, 1984, mailing was an interim communication between the insurance carrier and *507 the insured until the next regular policy renewal date upon which individual notification of coverage availability was mandated. N.J.A.C. 11:3-15.3(c).
Moreover, the legislature is presumed to be familiar with its own enactments. Thus, where a specific requirement, i.e., generation of a proof of mailing, is expressly set forth in one provision of an otherwise integrated statutory scheme, N.J.S.A. 17:29C-10, but has not been utilized in another provision also dealing with notice requirements, i.e., N.J.S.A. 39:6A-23; N.J.A.C. 11:13-15, et seq., a conclusion of intent to delete such a requirement should be drawn. Coast Cigarette Sales, Inc. v. Mayor & City Council of City of Long Branch, 121 N.J. Super. 439, 297 A.2d 599 (Law Div. 1972); Squires v. Atlantic County Freeholder Bd., 200 N.J. Super. 496, 503, 491 A.2d 823 (Law.Div. 1985).
The law as set forth in the "Notice of Coverage" provisions imposes a duty on the carrier to prove only that it mass mailed the requisite materials. Thus, the conclusive fact of mailing can be established in this case, by testimony of office policy by the people actually charged with the task of mass mailing the notices. See; Borgia v. Bd. of Review, supra, 21 N.J. Super. at 467-468, 91 A.2d 441; Weathers v. Hartford Insurance Group, supra, 77 N.J. at 234-235, 390 A.2d 548; Cwiklinski v. Burton, supra, 217 N.J. Super. at 511, 526 A.2d 271.
In this case, Aetna asserts that it mailed the "Buyers Guide and Coverage Selection Form" to each and every Aetna private passenger automobile insurance policyholder during the middle of May, 1984. In support of its position, Aetna offers the affidavits of James Donahue and Frank O'Brien, employees responsible for undertaking its mass mailings and copies of interoffice communications regarding these mailings.
O'Brien, an Aetna employee, was directly responsible for the mailing which included having the requisite materials stuffed in *508 window envelopes which were then affixed with the individual address labels of all Aetna private passenger automobile policyholders. The affidavit of Donahue indicates that he directed the Aetna Systems Department to prepare a computer printout of all private passenger automobile policyholders and arranged to have these names and addresses produced on labels for the window envelopes utilized by O'Brien. No contradictory testimony has been proffered by plaintiffs.
The Court hereby finds that the proofs submitted by Aetna sufficiently show that notice was mailed, thus permitting the Court to find, as a matter of law, that plaintiffs received the requisite explanatory documents from Aetna. Accordingly, summary judgment is granted to the defendant, Aetna.

II.
The plaintiffs additionally assert a claim of negligence against its insurance agent claiming that the agent breached a fiduciary duty owed to its client. Plaintiffs rely upon Sobotor v. Prudential Property Casualty Ins. Co., 200 N.J. Super. 333, 491 A.2d 737 (App.Div. 1984) as establishing the agent's fiduciary duty to notify them of the availability of additional insurance coverage.
In Sobotor, there was a specific inquiry by a prospective insured requesting the agent to obtain the "best available coverage." Id., at 342, 491 A.2d 737. In that instance, it is clear that the failure by the agent to provide adequate insurance coverage information, so as to enable the prospective insured to make an informed choice, renders the agent liable in damages for the breach of his fiduciary duty.
In short, Sobotor involves an agent's failure to fully respond to an inquiry by a client. Here, the question is not the adequacy of a response to an inquiry, but rather whether the agent, not required by statute to provide a notice, nevertheless has an independent duty to provide an explanation of the import of the notice to the insured.
*509 The Court here, has found there is sufficient evidence that plaintiffs did receive the information regarding available coverage. In a situation where the legislature has sought fit to impose that mandatory obligation on the carrier, there is no reason to impose a like obligation on the agent. The agent has a right to rely on the satisfaction of the statutory obligation by its principal.
Plaintiffs' reliance upon Sobotor is therefore misplaced. The agent having no affirmative fiduciary obligation to contact its prior customers is not liable in damages to the plaintiff. Summary judgment is hereby granted to the defendant MacLean Agency.
NOTES
[1] In addition, plaintiffs' UIM coverage would have been increased since, effective January 1, 1984, UIM coverage became incorporated into UM coverage.