237 N.J. Super. 444 (1989)
568 A.2d 119
DAVID PINTO, EXECUTOR OF THE ESTATE OF THE LATE EZEKIEL PINTO AND HILDA PINTO, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
ROBERT N. GARRETSON AND ALLSTATE INSURANCE COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1989.
Decided December 29, 1989.
*445 Before Judges MICHELS, R.S. COHEN and BROCHIN.
Steven J. Greenstein argued the cause for appellants (Shevick, Ravich, Koster, Tobin, Oleckna & Reitman, attorneys; Steven J. Greenstein, of counsel and on the brief).
*446 Joan M. Schwab argued the cause for respondents (Saiber, Schlesinger, Satz & Goldstein, attorneys; David J. D'Aloia, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs David Pinto, executor of the estate of the late Ezekiel Pinto and Hilda Pinto, individually, appeal from a summary judgment of the Law Division entered in favor of defendants Allstate Insurance Company (Allstate) and Robert N. Garretson (Garretson). Plaintiffs instituted suit against Allstate and Garretson, alleging professional negligence in failing to exercise due diligence in the sale of underinsured motorist coverage to Ezekiel Pinto (Pinto). On appeal, plaintiffs contend that the trial court erred in granting summary judgment in favor of the defendants, because Garretson was negligent in failing to advise Pinto of the importance of the Buyer's Guide/Written Notice and in failing to recommend that Pinto purchase additional underinsured motorist coverage. Additionally, plaintiffs contend that Allstate was vicariously liable for Garretson's negligence.
We have carefully considered the record in light of the arguments presented and are satisfied that the trial court properly granted summary judgment in favor of defendants in this matter and that all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E). Accordingly, the summary judgment under review is affirmed substantially for the reasons expressed by Judge Reavey in her oral opinion of May 27, 1988.
Additionally, on January 1, 1984, an amended version of the uninsured and underinsured motorist coverage statute, N.J.S.A. 17:28-1.1(b), became operative. The amendment required for the first time that insurers offer as an option increased limits of uninsured (UM) and underinsured (UIM) coverage up to the *447 bodily injury liability limits carried by the insured. As amended in 1984, N.J.S.A. 17:28-1.1(b) specifically provided:
b. Uninsured and underinsured motorist coverage shall be provided as an option by an insurer to the named insured up to at least the following limits: $250,000.00 each person and $500,000.00 each accident for bodily injury; $100,000.00 each accident for property damage or $500,000.00 single limit, subject to an exclusion of the first $250.00, of such damage to property for each accident, except that the limits for uninsured and underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively.
Rates for uninsured and underinsured motorist coverage for the same limits shall, for each filer, be uniform on a Statewide basis without regard to classification or territory.
Pursuant to Section 17 of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984, the Commissioner of Insurance promulgated standards for the written notice and buyer's guide to be provided to applicants for automobile insurance and policyholders. N.J.A.C. 11:3-15.1 through 15.9. The Commissioner's regulations established "the necessary minimum standards companies shall use in giving notice of available coverages, options and rate credits." N.J.A.C. 11:3-15.1.
These regulations required all New Jersey insurers to provide a Buyer's Guide/Written Notice and coverage selection form to all policyholders on or before May 15, 1984. See N.J.A.C. 11:3-15.3(b). The section further provided for inclusion of a Written Notice with each notice of renewal for the policies renewing after July 1, 1984. N.J.A.C. 11:3-15.3(c). The regulations detailed the required content of the written notice and the buyer's guide. N.J.A.C. 11:3-15.4; 11:3-15.5. Additionally, the regulation stated that the "written notice also shall provide a selection form enabling the named insured to choose coverage options." N.J.A.C. 11:3-15.4(b). The regulations also set forth the specific coverages and options to be included in the written notice and buyer's guide, including higher limits of uninsured and underinsured motorist coverage. N.J.A.C. 11:3-15.6(a)(5). Finally, N.J.A.C. 11:3-15.9 provides that:

*448 The buyer's guide and written notice incorporate and therefore satisfy any and all other notice requirements previously set forth for the coverage options required by the New Jersey Automobile Reparation Reform Act, the New Jersey Automobile Insurance Reform Act of 1982 and the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984.
Pursuant to these regulations, by May 1984, Allstate mailed its Buyer's Guide/Written Notice to all insureds, including Pinto. Section IV of the Buyer's Guide, entitled "Uninsured Motorists Coverage (Including Underinsured Motorists Coverage)" states in its entirety:
An uninsured vehicle is one for which no insurance is in effect. As required by state law, Uninsured Motorists coverage applies to bodily injury caused by an uninsured or hit-and-run driver. You, resident relatives and occupants of your auto are covered. Protection for damage to your auto caused by an uninsured motorist is provided on a deductible basis. This property damage coverage does not apply to damage caused by a hit-and-run driver. The lowest Uninsured Motorists coverage limit permitted for bodily injury is $15,000 per person/$30,000 per accident. $5,000 is the minimum available for property damage.
An underinsured vehicle is one covered by Liability insurance, but for an amount less than the Underinsured Motorist coverage you have purchased. Underinsured Motorists coverage pays only up to the dollar difference between your Underinsured Motorist coverage limits and the Liability coverage limit available from the negligent person's policy.
Allstate has combined Uninsured and Underinsured Motorists protection into one coverage. The limits you purchase for this coverage provide protection against uninsured motorists and underinsured motorists. Limits higher than $15,000/$30,000/$5,000 for Uninsured Motorists coverage (including Underinsured Motorists coverage) are available for additional premium. Uninsured Motorists Coverage (including Underinsured motorists coverage) limits, however, cannot be higher than the Liability limits in your policy.
If your policy is issued in accordance with the New Jersey Automobile Insurance Plan, Uninsured Motorists Coverage is available only at limits of $15,000/$30,000/$5,000. [Emphasis supplied].
In addition to the Buyer's Guide/Written Notice, Allstate also mailed to its insureds, including Pinto, a coverage selection form which states:
UNINSURED/UNDERINSURED MOTORIST COVERAGE OPTIONS. I can choose to purchase higher limits of UNINSURED/UNDERINSURED motorist coverage than required by law, but only up to the limit I have selected for liability coverage. Please refer to the Buyer's Guide/Written Notice for a description of this coverage. Contact your agent/broker/company for information about the higher limits available and cost.
*449 Although the UM/UIM coverage section of the form did not have any boxes for an insured to check the amount of coverage he desired, the form clearly stated that the insured should contact his agent to inquire about higher limits of UM/UIM coverage.
Prior to the November 1984 renewal of Pinto's policy, Allstate mailed another Written Notice and coverage selection form in compliance with New Jersey statutory law. These documents again informed Pinto, in the language set forth above, that higher limits of UM/UIM coverage were available. After reading these forms, Pinto returned a signed copy of the coverage selection form. In so doing, Pinto chose several options on the form which reduced his coverage so that his insurance premiums would be lower. Specifically, Pinto selected the $1,500 tort threshold option, which reduced his premium by 23%. Additionally, Pinto selected a $2,500 PIP deductible which resulted in a 30% premium reduction. Finally, Pinto checked off a box declining any additional personal injury protection (PIP) benefits. Based on these facts, it is apparent that Pinto was not interested in selecting additional coverage at a higher rate. Moreover, Pinto did not contact his agent, Garretson, regarding information about the higher UM/UIM limits available.
Plaintiffs contend that the forms were confusing and, as such, could not be understood by a "layman." Although some insurance forms may be difficult for a layman to comprehend, there is nothing confusing about the statement "contact your agent for information." The policy plainly and unambiguously stated that Pinto was insured for $100,000/$300,000 liability and $15,000/$30,000 UM/UIM coverage.
Pinto had been informed  in language required by New Jersey statutes and regulations  of the availability of increased limits of coverage. The Buyer's Guide/Written Notice, which was mailed to Pinto by Allstate, satisfied the statutory notice requirement. N.J.A.C. 11:3-15.9. Allstate certainly had no *450 further duty to communicate directly with Pinto, to advise him of the importance of the notice, or to recommend that he purchase additional insurance coverage. Moreover, Garretson, as the agent, had no affirmative, independent duty to communicate with Pinto concerning the availability of additional underinsured motorist coverage. See Bruce v. James P. MacLean Firm, et al., 238 N.J. Super. 501 (Law Div. 1989), aff'd o.b., 238 N.J. Super. 408 (App.Div. 1989).
Furthermore, as the trial court correctly concluded, Sobotor v. Prudential Property & Casualty Ins. Co., 200 N.J. Super. 333 (App.Div. 1984), is factually distinguishable and does not compel a contrary conclusion. Unlike the plaintiff in Sobotor, Pinto was not a new insured in this State, seeking information about coverage. Pinto had received information about increased limits of UM/UIM coverage prior to his accident. Indeed, it is undisputed that Pinto received a Buyer's Guide/Written Notice and a coverage selection form which he signed and returned to Allstate.
Consequently, since Pinto received the requisite statutory notice from Allstate, neither Allstate nor Garretson are under any liability to plaintiffs in this matter.
Beyond this, even though not argued, the summary judgment is sustainable on the additional ground that Pinto's motor vehicle was not an underinsured motor vehicle within the meaning of N.J.S.A. 17:28-1.1(e). In 1983, the Legislature amended the uninsured motorist coverage statute to include optional underinsured motorist coverage, as well. N.J.S.A. 17:28-1.1. The statute describes the UIM coverage as follows:
For the purpose of this section, (1) "underinsured motorist coverage" means insurance for damages because of bodily injury and property damage resulting from an accident arising out of the ownership, maintenance or use of an underinsured motor vehicle.... A motor vehicle is underinsured when the sum of the limits of liability under all bodily injury and property damage liability bonds and insurance policies available to a person against whom recovery is sought for bodily injury or property damage is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy held by the person seeking that recovery. A *451 motor vehicle shall not be considered an underinsured motor vehicle under this section unless the limits of all bodily injury liability insurance or bonds applicable at the time of the accident have been exhausted by payment of settlements or judgments. The limits of underinsured motorist coverage available to an injured person shall be reduced by the amount he has recovered under all bodily injury liability insurance or bonds. [N.J.S.A. 17:28-1.1(e)].
Under the explicit and unambiguous language of this statute, a motor vehicle is not considered an underinsured motor vehicle unless the limits of all bodily liability insurance applicable at the time of the accident have been exhausted by the payment of settlements or judgments. See Nikiper v. Motor Club of America Cos., 232 N.J. Super. 393, 398-399 (App.Div. 1989), certif. den., 117 N.J. 139 (1989). Here, Pinto's motor vehicle was involved in a head-on collision with a motor vehicle driven by Robert Pascalli, which had liability insurance coverage in the amount of $15,000/$30,000. Pinto's motor vehicle was then hit in the rear by a motor vehicle driven by John Tracey, which had single limit liability insurance coverage in the amount of $500,000. Pinto's motor vehicle had bodily injury liability limits of $100,000/$300,000 and uninsured/underinsured coverage in the amount of $15,000/$30,000. Pinto's claims were settled by Tracey's insurance carrier paying $100,000 of the $500,000 available and Pascalli's insurance carrier paying the entire $30,000 policy limit. Thus, even assuming that Pinto had purchased the maximum available underinsured motorist coverage, his motor vehicle would not have been an underinsured motor vehicle. The maximum UIM coverage that Pinto would have been able to obtain was $100,000/$300,000  the limit of his bodily injury and property damage liability insurance coverage. See N.J.S.A. 17:28-1.1(b). Since the limit of all bodily liability insurance applicable at the time was $500,000 under Tracey's policy and $30,000 under Pascalli's policy, or a total of $530,000, Pinto was not underinsured within the meaning of the statute, and therefore, would not be entitled to any recovery under any additional UIM coverage that he could have purchased from Allstate.
Affirmed.