242 N.J. Super. 185 (1990)
576 A.2d 311
ARNOLD SIKKING AND SIKKING BROTHERS, INC., PLAINTIFFS-APPELLANTS,
v.
EGERY NELSON, EGERY NELSON, INC., DEFENDANT-APPELLANT, AND SELECTED RISKS INSURANCE COMPANY NOW KNOWN AS SELECTIVE INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1990.
Decided June 28, 1990.
*186 Before Judges SHEBELL, BAIME and KEEFE.
Christopher P. Leise argued the cause for the appellant, Egery Nelson, Egery Nelson, Inc. (White and Williams, attorneys; Christopher P. Leise, of counsel and on the brief).
Thomas F. Bullock argued the cause for the appellant, Arnold Sikking.
Susan L. Moreinis argued the cause for the appellant, Sikking Brothers, Inc.
*187 James A. Mullen, Jr., argued the cause for the respondent Selected Risks Insurance Company (Montano, Summers, Mullen, Manuel, Owens and Gregorio, attorneys; James A. Mullen, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The question presented on this appeal is whether an insurer who failed to provide its insured with a written notice and buyer's guide by May 15, 1984 thereby failing to advise the insured, among other things, of the availability of underinsured motorist insurance up to the bodily injury limits of the insured's policy, can be liable to the insured who is injured in an automobile accident on June 9, 1984 due to the negligence of an underinsured motorist for damages sustained in excess of the underinsured's liability coverage up to the limits of the insured's liability coverage. The Law Division judge resolved the issue in favor of the insurer and granted summary judgment to Selected Risk Insurance Company (Selected).[1] Plaintiff Arnold Sikking and Sikking Brothers, Inc. (plaintiffs) and plaintiffs' insurance broker Egery Nelson, individually, and Egery Nelson, Inc. (Nelson) thereafter moved for leave to appeal which we granted. We now reverse the judgment in favor of Selected and remand the matter for further proceedings in compliance with this opinion.
The facts were stipulated to the Law Division judge only for the purpose of determining plaintiffs' claim against Selected.[2] *188 Arnold Sikking, president of Sikking Brothers, Inc., was severely injured in an accident of June 9, 1984. Sikking Brothers, Inc. is a family owned business primarily engaged in growing and selling gladiolas. As a result of Arnold's injuries, Sikking Brothers, Inc. alleges to have suffered financial loss. The tortfeasor carried liability coverage of $25,000 and apparently has paid the policy limits to plaintiffs. However, plaintiffs claim that their damages are far in excess of that amount.
At the time of the accident plaintiffs were insured under an automobile policy issued by Selected. The policy contained bodily injury single limit coverage of $300,000 and an uninsured/underinsured motorist (UM/UIM) endorsement having single limits of $50,000. The policy covered several personal vehicles, one of which was being driven by Arnold Sikking on June 9, 1984. The policy was renewed on April 21, 1984 for a term of one year. Selected also renewed an excess liability policy with liability limits of $1,000,000 to Sikking Brothers, Inc. which is not involved in this litigation.
The Selected policy as written would permit $25,000 to be available under the UIM endorsement to satisfy plaintiffs' underinsurance claim.[3] Plaintiffs, unsatisfied with that prospect, brought suit against Nelson and Selected alleging that they failed to make appropriate offers of additional UIM coverage prior to June 9, 1984. Plaintiffs sought reformation of the insurance policy to increase the UIM coverage to the maximum limits permitted by law, i.e., $300,000. See N.J.S.A. 17:28-1.1.
Plaintiffs apparently had $50,000 UIM single limit coverage at least since the renewal of the policy in April, 1983. The Law Division judge was also advised that Arnold Sikking had met with Egery Nelson to discuss the renewal of the policy in April *189 1984. However, there was no stipulation concerning the content of that conversation.
Selected admitted that it did not mail a written notice and buyer's guide to plaintiffs by May 15, 1984 as required by section 17(b) of "The New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984" (ACT) (L. 1983, c. 362).[4] Instead, the material was mailed by third class postage on June 8, 1984. It is agreed that plaintiffs did not receive the material before the accident of June 9, 1984. Selected further admits that it was voluntarily offering UIM coverage up to the bodily injury and property damage limits of its insureds' policies prior to the April 1984 renewal, and that it would have written UIM coverage up to the limits contained in plaintiffs' basic policy, ($300,000 single limit for bodily injury), in April 1984 had it been asked to do so by plaintiffs' agent, Nelson.
After considering the respective arguments of counsel, the Law Division judge, as indicated earlier, granted judgment in favor of Selected. The following passage from the bench opinion best expresses the judge's reasoning.
I find the principal purpose of these regulations is to give notice of the existence of that kind of insurance and that an insured may choose that kind with certain dollar limits, if he so elects.
I find that Sikking through or with his agent's assistance has already made such a choice and continued the choice in renewing the policy in April of 1984. Sikking and his agent had notice of that kind of coverage since they had already had it since at least 1983.
Since the regulations are essentially designed to give notice and have as a principal purpose of their implementation the statutory mandate and the insured Sikking has already had the notice and has already made an election, I don't find any basis for recovery by Sikking against  on a direct claim, against Selective. And, therefore, as I understand that to be the nature of the claim, I dismiss Sikking's claim against Selective.
*190 The "regulations" referred to in the judge's opinion were those promulgated by the Commissioner of Insurance pursuant to section 17 of the Act. (N.J.A.C. 11:3-15.1 to 15.9.)
The Law Division judge's reasoning can be interpreted in two ways. He may have assumed factually that Sikking must have been advised by Nelson in April 1983 or April 1984 that Sikking had the option to purchase UIM coverage up to the $300,000 bodily injury single limit of the Selected policy simply because $50,000 UIM insurance was purchased. If that was the assumption, the judge went far beyond the stipulated facts and erred in so doing. There was simply no stipulation concerning the content of the conversation between Sikking and Nelson. No inference can be drawn from the stipulation other than the fact that $50,000 of UIM coverage was purchased. Any conclusion beyond that is purely speculative.
On the other hand the trial judge may simply have interpreted the regulations promulgated by the Commissioner to require notice only of the availability of UIM coverage without a need to advise insureds of the maximum limits available. Reasoning from that interpretation of the regulations, the judge may have found that, because plaintiff purchased $50,000 of UIM/UM coverage, he had received the requisite notice. In any event, he concluded that Selected's failure to comply with the notification requirement could not have been a proximate cause of any injury to plaintiffs. However, even if that interpretation of the judge's ruling is correct we find the reasoning to be faulty because the initial premise is incorrect. The clear wording of section 17 of the Act expresses a legislative intent that insureds be notified not only of the availability of UIM coverage but also the limits of available coverage.
Section 17(b) of the Act required all insurers to provide "not later than May 15, 1984 ... a written notice and buyer's guide" to any insured whose policy was "in force on July 1, 1984."[5] *191 The written notice and buyer's guide was required to contain a "brief description of all available policy coverages and benefit limits, and shall identify which coverages are mandatory and which are optional under State law...." L. 1983, c. 362, § 17(a).[6] Section 1(a) of the Act requires insurers to offer UIM insurance as an option with respect to any new policy or "renewal of such policy."[7] Section 1(b) of the Act required insurers to offer coverage
to at least the following limits: $250,000.00 each person and $500,000.00 each accident for bodily injury; $100,000.00 each accident for property damage or $500,000.00 single limit, subject to an exclusion of the first $250.00, of such damage to property for each accident, except that the limits for uninsured and underinsured motorist coverage shall not exceed the insured's motor vehicle liability policy limits for bodily injury and property damage, respectively. [N.J.S.A. 17:28-1.1(b)].
The Commissioner of Insurance also interpreted the legislative mandate in the same way by promulgating the following regulations.
The buyer's guide shall contain a description of the policy coverages, benefit limits and coverage options offered by the insurer, .... [N.J.A.C. 11:3-15.5].
* * * * * * * *
At least the following coverages and options shall be included in the written notice and buyer's guide:
....
5. Higher limit uninsured and underinsured motorist coverage in accord with P.L. 1983, c. 362. [N.J.A.C. 11:3-15.6(a)5].
It is clear that Selected had the obligation not only to notify its insureds with policies in force as of July 1, 1984 of the availability of UIM coverage but also the available optional limits of coverage.
On appeal, Selected argues that, even if the Law Division judge's reasoning was faulty, Selected's breach of the statutory requirement cannot be considered the proximate *192 cause of injury to the plaintiff. Selected points to section 17(b) of the Act and N.J.A.C. 11:3-15.8(b), the regulation implementing that section of the statute. Section 17(b) of the Act states:
In the case of an automobile insurance policy in force on July 1, 1984, the named insured shall be provided not later than May 15, 1984 with a written notice and buyer's guide, as required under subsection a. of this section. Every policy subject to this subsection shall be endorsed and, if necessary, rerated in accordance with the instructions provided by the named insured, as indicated on the written notice, which instructions shall be executed and shall take effect on July 1, 1984.
The regulation provides:
For any automobile policy in force on July 1, 1984, the named insured shall be provided not later than May 15, 1984 with a buyer's guide and written notice prepared in accord with this subchapter. The named insured is to complete, sign and return the selection form to the insurer. When a properly executed selection form is received, the insurer shall change and, if necessary, rerate the policy in accordance with the instructions of the named insured. These changes shall be effective July 1, 1984 or the date received if later than July 1, 1984. The options selected shall apply to the policy then in force as well as subsequent renewals and replacement policies until such time as the insurer or its authorized representative receives a properly executed written notice indicating that a change is desired. [N.J.A.C. 11:3-15.8(b)].
Relying upon these two provisions, Selected argues in its brief that it is "the legislative direction ... that insureds who request changes in their policies in response to receipt of the buyer's guide shall not have their policies adjusted until July 1, 1984." While acknowledging that there is no reason expressed in the statute or regulations for that date, Selected argues that
it can be assumed that the legislature did feel that no one insured shall have his policy changed ahead of any of the other thousands of New Jersey insureds who possibly would want their insurance policies changed as per the suggestions of the buyer's guide. It is also quite apparent that the automobile insurance companies issuing these policies would need time to make the necessary changes in an insured's policy without suffering some type of uncalled consequence. As a result, all of the prospective changes in the insurance policies issued in the State of New Jersey would all change on one and the same date.
We would agree with Selected's argument if Selected was one of the insurers who were not voluntarily offering the UIM coverage prior to January 1, 1984, the date when insurers were mandated to make such coverage available. L. 1983, c. 362, § 1; N.J.S.A. 17:28-1.1. However, sections 1 and 17 of the Act must *193 be read together. When that is done it can be seen that the legislative intent was to allow insurers who had not been offering the type of coverage mandated by the Act a period of time to adjust to the new law. It is most likely for that reason that, although sections 1 and 17 of the Act became operative on January 1, 1984, section 17 did not require notification until May 15, 1984 and did not require coverages elected by insureds pursuant to the notice to become effective until July 1, 1984.
However, we can perceive no just reason for affording an adjustment time for the implementation of coverage to insurers, such as Selective, who were already writing the very type of UIM coverage mandated by section 1 of the Act as of January 1, 1984. As noted earlier, Selected candidly admitted at oral argument that it would have written UIM coverage up to plaintiffs' single limit bodily injury coverage of $300,000 had it been asked to do so before June 9, 1984. Selected's argument taken to its logical conclusion is this. If plaintiffs by chance asked for increased UIM limits before the accident and without reference to any written notice from Selected as required by section 17(b) of the Act, the UIM limits would have been increased. However, if plaintiffs had asked Selected for increased limits because they received and read the written notice and buyer's guide, Selected could have refused to increase the limits until July 1, 1984.
The extension of Selected's argument points out the absurdity of the result it seeks. The Legislature could not have intended such an incongruity. It is clear that neither section 17 of the Act nor the regulations were drafted with insurers such as Selected in mind. However, while the specific problem presented by this case may not have been anticipated, it is clear that the Legislature intended to create a duty for all insurers to notify insureds with policies in force on July 1, 1984 of the available options and coverages not later than May 15, 1984. Consequently, we are satisfied that the essence of the statute was the creation of the duty to notify and advise and that a *194 breach of that duty proximately resulting in harm to an insured presents a cognizable claim.
Plaintiffs contend that, had they been notified by Selected on or before May 15, 1984 that coverage for UIM up to the $300,000 bodily injury limit was available as an option, coverage would have been obtained. That fact has not been stipulated to by Selected in connection with the summary judgment motion. However, plaintiffs maintain that such proof is not required and that reformation of the policy should be ordered as a matter of law once the statutory duty to provide notice has been breached. We disagree.
The case relied upon by plaintiff on this point is inapposite. In Peraglia v. Jones, 120 N.J. Super. 518, 295 A.2d 207 (App. Div. 1972) an insurance policy was reformed to include uninsured motorist coverage when the insurance company simply failed to make such coverage available to the insured at the time the applicable statute required it to be made available. In this case, Selected complied with N.J.S.A. 17:28-1.1 and made UIM coverage available in the optional amounts required by statute even before January 1, 1984, the effective date of the statute.
Reformation is not imposed as a matter of law, even in the presence of a statutory breach by the insurer, where there is a genuine fact issue raised as to the appropriateness of the remedy. Olivero v. New Jersey Mfrs. Ins. Co., 227 N.J. Super. 367, 377, 547 A.2d 710 (App.Div. 1988), certif. den. 115 N.J. 76, 556 A.2d 1219 (1989). See also Clendaniel v. New Jersey Mfrs. Ins. Co., 96 N.J. 361, 369, 476 A.2d 263 (1984). In this case, Selected's liability is premised upon its failure to give notification of the availability of optional UIM coverages. It would be inappropriate to reform the policy and afford such coverage if in the case between plaintiffs and Nelson it is proven that Nelson actually notified plaintiffs in April 1984, or before, that UIM insurance could be purchased up to the $300,000 bodily injury single limit but plaintiff elected instead to purchase *195 $50,000. On the other hand, reformation would be appropriate if it was determined that plaintiffs were not afforded such knowledge during the consultation with their broker. See Clendaniel, 96 N.J. at 369, 476 A.2d 263.
Reversed and remanded for further proceedings in accordance with this opinion.
NOTES
[1] Selected Risk Insurance Company is now apparently known as Selective Insurance Company.
[2] The procedure followed in the trial court is not to be encouraged. Instead of submitting a written stipulation to the trial judge or having one attorney make an oral presentation of the stipulation on behalf of all counsel, each attorney made separate oral representations to the judge. A close reading of the record shows some disharmony on the facts. Fortunately, those disagreements are not critical to our resolution of this appeal.
[3] We do not decide whether Sikking Brothers, Inc. has a cognizable claim for damages under these facts and note that Selected has reserved the right to pursue that issue at a later time.
[4] Section 17 of the Act complimented the No-Fault Act, N.J.S.A. 39:6A-1 et seq., creating a new section known as N.J.S.A. 39:6A-23.
[5] N.J.S.A. 39:6A-23(b).
[6] N.J.S.A. 39:6A-23(a).
[7] Section 1 of the Act amended N.J.S.A. 17:28-1.1.