690 A.2d 668

MICHAEL MACKENZIE, PLAINTIFF–RESPONDENT/CROSS–AP-
PELLANT, v. NEW JERSEY AUTOMOBILE FULL INSURANCE
UNDERWRITING ASSOCIATION, DEFENDANT–APPEL-
LANT/CROSS–RESPONDENT, AND NEW JERSEY SHORE IN-
SURANCE BROKERS, INC., THERESA COTUGNO AND STATE
FARM INSURANCE COMPANY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1997—Decided March 24, 1997.

Before Judges KING, CONLEY and LOFTUS.

*Richard J. Mirra* argued the cause for appellant/cross-respondent (*Boglioli, O'Mara & Mirra,* attorneys; *Mr. Mirra,* on the brief).

*Richard B. Ansell* argued the cause for respondent/cross-appellant (*Ansell, Zaro, Grimm & Aaron,* attorneys; *Mr. Ansell,* of counsel; *Stephanie H. Hodach,* on the brief).

The opinion of the court was delivered by

CONLEY, J.A.D.

This appeal arises from plaintiff insured's suit against his licensed broker, Theresa Cotugno/New Jersey Shore Insurance Brokers, Inc. (Shore),[1] and against his insurer, the New Jersey Automobile Full Insurance Underwriting Association (JUA).[2] Ultimately, plaintiff obtained a judgment against the JUA for reformation of his automobile policy and for $45,034.67 in counsel fees. We reverse.

---

[1] Shore became defunct during the proceedings in the trial court. Cotugno appeared *pro se* during the reformation nonjury trial. No judgment, default or otherwise, however, has ever been entered against her or Shore. No issues as to their liability, if any, have been raised in this appeal.

[2] Defendant State Farm was JUA's servicing carrier. It was dismissed from the litigation through plaintiff's voluntary dismissal.

The litigation was triggered by an automobile accident sustained by plaintiff. In 1988, plaintiff was a first-time insured and obtained a policy with the JUA through Shore. When he was injured as a result of the automobile accident which occurred while the JUA policy was in effect, plaintiff sought and obtained personal injury income protection (PIP) income continuation benefits. As submitted to JUA by Shore, plaintiff's insurance application and other necessary forms had contained a selection of option Q5 which provides for $400 per week with a maximum of $41,600 and plaintiff received that amount. There was available, however, at the time he completed and submitted his application an unlimited income continuation benefit option while disabled. *See N.J.S.A.* 39:6A–10. Plaintiff did not select this option and, thus, did not receive those benefits.

Plaintiff sued for reformation of his policy and/or damages arising from his failure to select the option for income continuation while disabled. He claimed Shore never told him of this option and that neither did the JUA. It is undisputed, however, that the application for insurance submitted by Shore to the JUA's servicing carrier included a signed "Coverage Selection Form" expressly acknowledging knowledge of the available options. Unbeknownst to the JUA, the signature on the form was not that of plaintiff, but his father whom he had requested to complete the insurance process for him and to pay the first installment on the required premium. It is not disputed that Shore had been supplied by JUA with the necessary forms that advised potential insureds of the available options.

In denying the JUA's motion for summary judgment, the motion judge essentially concluded that Shore was JUA's agent for the purpose of informing the first-time insured of the available options. He thus concluded: "to say that the JUA ought to get out of this case now that there's no chance of reformation of the policy against it now is ridiculous." We disagree. While there are other issues raised by this appeal and the JUA's cross-appeal arising from the proceedings and rulings following the denial of

JUA's motion for summary judgment, we reverse the denial of the JUA's motion for summary judgment and do not address these other issues.

For the purposes of the motion, the JUA stipulated to the facts as alleged by plaintiff in his pretrial memo and as augmented by the deposition testimony of plaintiff's father. Plaintiff's factual contentions were as follows:

In late August of 1988, plaintiff, accompanied by his mother, went to the office of defendant, Jersey Shore Insurance Brokers, Inc., and inquired of one of its employees, defendant, Theresa Cotugno, about purchasing automobile insurance. After having asked plaintiff some general questions, defendant, Cotugno, inquired about the types of coverage plaintiff would like to purchase. Plaintiff explained that he was unfamiliar with the various options available and asked defendant, Cotugno, to explain. Defendant, Cotugno, explained various options and the cost to purchase. Plaintiff specifically asked defendant, Cotugno, what the most complete comprehensive income continuation benefit was that he could purchase. At no time did defendant, Cotugno, ever inform plaintiff that there were unlimited income continuation benefit options which could be purchased which would have been payable for as long as an insured remained disabled.

After plaintiff had reviewed all of the options that were made available, defendant, Cotugno, assured him that the option designated as Q–5 was the most complete and comprehensive income continuation benefit available for his purchase. Based on defendant, Cotugno's assurances, plaintiff chose the Q–5 option, believing it to be the most complete and comprehensive income continuation benefit available. On that date, plaintiff's personal information and insurance coverage selection were entered by defendant, Cotugno, into her files. Plaintiff was to return to the defendant, Jersey Shore Insurance's office on September 3, 1988, to pay the premium for this policy.

A few days later, on September 2, 1988, plaintiff's father went to the office of the defendant, Jersey Shore Insurance Brokers, Inc., to pay the first installment on the insurance chosen by plaintiff. Plaintiff's father signed the application form in plaintiff's name without plaintiff's prior knowledge that anything further was necessary.

At a later date, plaintiff was mailed a copy of his automobile insurance policy number J362457–CO2–30. This policy had been issued by defendant, N.J.A.F.I.U.A., through its servicing carrier, State Farm Insurance Company, effective September 2, 1988, through September 2, 1989. The policy issued and furnished to plaintiff listed only eight (8) income continuation options, all of which have limited maximum total benefits. The policy did not include any income continuation benefits options payable for as long as the insured was disabled.

Plaintiff's father confirmed at his deposition that he signed the application form and a coverage selection form, although he denied any knowledge as to what was contained in them. It is undisputed

that the coverage selection form indicates that the insured is aware of the available options, including unlimited income continuation while disabled.

The JUA was created under the New Jersey Automobile Full Insurance Availability Act, *N.J.S.A.* 17:30E–1 to –24. Prior to October 1, 1990 (*N.J.S.A.* 17:30E–7(e); *N.J.S.A.* 17:33B–11), it issued policies through its servicing carriers. *N.J.S.A.* 17:30E–7(e). Licensed insurance agents or brokers (producers) could submit applications for insurance on behalf of their prospective insureds to the servicing carriers and were authorized to issue binders. *N.J.S.A.* 17:30E–9(a).

The New Jersey Automobile Reparation Reform Act (No–Fault Law), *N.J.S.A.* 39:6A–1 to –35, requires that every automobile liability insurance policy afford personal injury protection (PIP) coverage regardless of fault, including basic income continuation benefits. *N.J.S.A.* 39:6A–4(b). It also requires that insurers make available optional PIP benefits, including income continuation benefits during disability. *N.J.S.A.* 39:6A–10. *And see Werts v. New Jersey Mfrs. Ins. Co.,* 250 *N.J.Super.* 580, 588, 595 *A.*2d 1110 (App.Div.), *certif. denied,* 127 *N.J.* 554, 606 *A.*2d 366 (1991).

As to the insurers' obligations to notify insureds of available options, and as effective at the time of plaintiff's initial application, *N.J.S.A.* 39:6A–23(a) provides:

a. No new automobile insurance policy shall be issued on or after the 180th day following the effective date of P.L.1985, c. 520, *unless the application for the policy is accompanied by a written notice identifying and containing a buyer's guide and coverage selection form.* The buyer's guide shall contain a brief description of all available policy coverages and benefit limits, and shall identify which coverages are mandatory and which are optional under the State law as well as all options offered by the insurer.

. . . .

The coverage selection form shall identify the range of premium rate credit or dollars savings, or both, and shall provide any other information required by the commissioner by regulation.

The applicant shall indicate the options elected on the coverage selection form which shall be signed and returned to the insurer. [Emphasis added.]

*N.J.S.A.* 39:6A–23, then, requires an insurance application to be "accompanied by a written notice identifying and containing a buyer's guide and coverage selection form." As to renewals, all notices thereof must be accompanied by the same information. *N.J.S.A.* 39:6A–23(c).

The JUA does not dispute that it had a statutory duty to offer such benefits and that, statutorily, all options must be identified and briefly discussed in a buyer's guide and coverage selection form to accompany each policy application and notice of renewal so as to give notice to the applicant of the options. *N.J.S.A.* 39:6A–23(a) and (c).[3] If actually provided, such notice is adequate to shield the insurer and broker from liability. *Pinto v. Garretson*, 237 *N.J.Super.* 444, 450, 568 *A.*2d 119 (App.Div.1989). "A properly completed and executed coverage selection form shall be *prima facie* evidence of the named insured's knowing election or rejection of any option." *N.J.S.A.* 39:6A–23(e). Here, when the JUA issued the policy to plaintiff it had an application and a coverage selection form that appeared to have been signed by the applicant.

The JUA contends that, as to new applicants in 1988, it satisfied its obligation under *N.J.S.A.* 39:6A–23(a) by supplying licensed brokers, such as Shore, with the necessary buyer's guide and forms to accompany the applications that the brokers would obtain from a prospective insured and submit to the servicing carriers. Under these circumstances, the JUA further contends that, here, it reasonably relied upon receipt of a coverage selection form, signed with plaintiff's name, as evidence that plaintiff had received the required notice. *N.J.S.A.* 39:6A–23(e).

In this respect, the Servicing Carrier Booklet issued to Shore provided that agents and producers give a buyer's guide to each new customer. The buyer's guide set forth the options of addi-

---

[3] *N.J.A.C.* 11:3–7.5 requires notice of optional PIP benefits under *N.J.S.A.* 39:6A–10 "at least annually as part of the Coverage Selection Form required pursuant to *N.J.S.A.* 39:6A–23...."

tional PIP coverage and Shore forwarded to the JUA a "Coverage Selection Form" signed with the name "Michael MacKenzie," which attested, "I have read the Buyer's Guide outlining the coverage options available to me." On the page "William MacKenzie" signed, next to the choice for Option 5, the form read: "PLEASE NOTE: Broader forms of this benefit are available upon request. Contact the Servicing Carrier or Producer of Record about this coverage." Plaintiff does not contend that this caution was inadequate.

 Plaintiff acknowledged that he authorized his father to sign for him, making his father his agent for that purpose. "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Sears Morg. Corp. v. Rose*, 134 *N.J.* 326, 337, 634 *A.*2d 74 (1993). A party is bound by the instrument he signs, absent " 'evidence of fraud or other legal excuse which would have relieved the [party] of the [ ] duty to read the disclosure statement....' " *Dancy v. Popp*, 114 *N.J.* 570, 572, 556 *A.*2d 312 (1989) (citation omitted) (alteration in the original). No fraud is suggested here and the JUA had no reason to doubt the binding effect of the signature, especially after plaintiff impliedly affirmed it by accepting the policy, knowing his father had signed his name.

 Plaintiff does not dispute, moreover, that Shore was an independent broker and not an agent of JUA. He argues, however, that Shore acted as the JUA's agent for the limited purpose of informing him of the PIP options. The Supreme Court has made it clear that, though both brokers and agents are obligated to exercise good faith and reasonable skill in advising insureds, when a broker's negligence leads to inadequate coverage, only the broker is liable to pay money damages for the resulting loss. *Weinisch v. Sawyer*, 123 *N.J.* 333, 340, 587 *A.*2d 615 (1991). The broker's breach will not support an action against the insurer for reformation, nor may the broker obtain indemnification from the insurer. *Id.* at 340–41, 587 *A.*2d 615. Reformation is "unavailable

in actions involving an independent broker's negligence...." *Id.* at 341, 587 *A.*2d 615.

■ To be sure, a broker may, under certain circumstances, be considered an agent of the insurer. *See Avery v. Arthur E. Armitage Agency,* 242 *N.J.Super.* 293, 312, 576 *A.*2d 907 (App.Div. 1990). But as we there said, "if [the broker] is found to be negligent in failing to advise [the insureds] of the availability of additional optional uninsured motorist coverage such negligence was not within the scope of [the broker's] agency for [the insurer]. Rather, the negligence arose from [the broker's] relationship to [the insureds], its clients." *Id.* at 313, 576 *A.*2d 907.

■ We recognize that *Avery* concerned a broker's duty to the insured as to available UIM/UM options. But, we see no reason for distinguishing cases concerning the respective duties and corresponding relationships between a broker and an insurer simply because one case may deal with optional UM/UIM benefits and the other with optional extended PIP income continuation benefits. In either case, the broker is the insured's agent for the purpose of receiving and conveying the necessary options. *And see Sikking v. Nelson,* 242 *N.J.Super.* 185, 189, 576 *A.*2d 311 (App.Div.1990) (noting the complementary relationships between the Automobile Insurance Freedom of Choice and Cost Containment Act and the No–Fault Act).

Moreover, as noted by plaintiff, we have previously held that an insurer satisfies its statutory notice obligations by mailing the buyer's guide and necessary notice forms directly to the insured. *Bruce v. James P. MacLean Firm,* 238 *N.J.Super.* 501, 505–07, 570 *A.*2d 49 (Law Div.), *aff'd,* 238 *N.J.Super.* 408, 570 *A.*2d 1 (App.Div.1989). *And see Andriani v. New Jersey Mfrs. Ins. Co.,* 245 *N.J.Super.* 252, 584 *A.*2d 875 (App.Div.), *certif. denied,* 126 *N.J.* 327, 598 *A.*2d 886 (1991); *Pinto v. Garretson,* 237 *N.J.Super.* 444, 568 *A.*2d 119 (App.Div.1989). But the point is, there is, presently, no statutory requirement that the notice obligations of an insurer as to a first-time insured and in connection with a *new application,* require that the buyer's guide and selection form be

sent directly to the new applicant by the insurer. *N.J.S.A.* 39:6A–23(a) simply requires that *new applications* be accompanied by the buyer's guide and selection form. Indeed, *N.J.A.C.* 11:13–15.9(a) simply requires: "[f]or all *new policies,* an insurance company ... shall *receive* a signed Coverage Selection Form indicating the prospective insured's coverage choices." (Emphasis added.).

In contrast, *N.J.A.C.* 11:3–15.9(b) provides that for all *renewals* "the insurance company shall provide its Coverage Selection Form to the named insured *with the notice of renewal.*" (Emphasis added.).

■ Since a broker is the insured's agent for the purpose of advising of available insurance options, we see no breach of any statutory or other duty on the part of the insurer in providing the necessary notices to the broker as agent for a first-time insured such as plaintiff. We specifically reject plaintiff's contention that having received the application and the coverage selection form with what appeared to be plaintiff's signature, the JUA nonetheless had an additional duty to send a buyer's guide and/or other notice of available options to plaintiff with the policy itself.

We recognize that when enacted in 1983 by *L.* 1983, c. 362, § 17, *N.J.S.A.* 39:6A–23 contained a subsection (b). That subsection "required all insurers to provide 'not later than May 15, 1984 ... a written notice and buyer's guide' " to any insured whose policy was " 'in force on July 1, 1984.' " *See Sikking v. Nelson, supra,* 242 *N.J.Super.* at 190, 576 *A.*2d 311 (alteration in original). It was the mailing of this written notice that was involved in *Bruce v. James P. MacLean Firm, supra,* 238 *N.J.Super.* 501, 570 *A.*2d 49. *And see Andriani v. New Jersey Mfrs. Ins. Co., supra,* 245 *N.J.Super.* 252, 584 *A.*2d 875. But that statutory duty to mail a written notice of available options directly to the insured was clearly limited to people who, at the time of the enactment of the Act, were current policy holders so that they could be timely notified of the new optional coverages and benefits. Indeed, that

provision was deleted by *P.L.* 1985, c. 520, § 5 and was not in effect at the time of plaintiff's new application.[4]

■ Finally, we consider *N.J.S.A.* 17:28–1.9(a), although not raised by the parties. Enacted in 1994, it provides in pertinent part:

> a. Notwithstanding any other provision of law to the contrary, no person, including, but not limited to, an insurer, an insurance producer ... the New Jersey Automobile Full Insurance Underwriting Association ... shall be liable *in an action for damages on account of the election of a given level of motor vehicle insurance coverage* by a named insured as long as those limits provide at least the minimum coverage required by law.... Nothing in this section shall be deemed to grant immunity to any person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.
>
> [*N.J.S.A.* 17:28–1.9(a) (emphasis added.) ]

In *Strube v. Travelers Indemnity Company of Illinois*, 277 *N.J.Super.* 236, 649 *A.*2d 624 (App.Div.1994), *aff'd o.b.*, 142 *N.J.* 570, 667 *A.*2d 188 (1995), we held that the immunity provided in subsection a, except in cases of willful, wanton, or gross negligence, was intended to put an end to the prior "explosion of litigation," and applied to all antecedent policies. Although it refers to immunity from "damages," such "damages" as to the carriers in the "explosion of litigation" in fact was a reformation of the policy. We also acknowledge that the statute does not expressly encompass PIP insurance coverage. But the pivotal lan-

---

[4] We take note of the provision in *N.J.S.A.* 39:6A–10 which at the time of plaintiff's 1988 application required: "The additional coverage shall be offered by the insurer at least annually on a form prescribed by the Commissioner of Insurance, *which shall be attached to or accompany* all applications, *initial policies* and renewal policies or renewal notices." *L.* 1985, c. 520, § 16 (emphasis added). This language was amended in 1990 to require only that "[t]he additional coverage shall be offered by the insurer at least annually as part of the coverage selection form required by section 17 of P.L.1983, c. 362 (C. 39:6A–23)." *L.* 1990, c. 8. *See N.J.A.C.* 11:3–7.5(a). Here, JUA satisfied its notice obligation under *N.J.S.A.* 39:23(a) by providing the broker with the buyer's guide and coverage selection form to be given to prospective new insureds with the initial application and on whose behalf the application is forwarded to the JUA. We do not read *N.J.S.A.* 39:6A–10 to mandate that, in addition, the JUA must *also* send a buyer's guide and coverage selection form directly to the new insured with the first policy.

guage as to subsection a, we think, is "on account of the election of a given level of motor vehicle insurance coverage." Optional income continuation benefits is such an election. Even were we wrong as to this and *N.J.S.A.* 17:28–1.9(a) not applicable to the plaintiff's claims here, summary judgment nonetheless should have been granted for the reasons we have previously expressed.

Reversed and remanded for entry of a judgment dismissing the complaint as to the JUA.