277 N.J. Super. 236 (1994)
649 A.2d 624
NANCY STRUBE, PLAINTIFF-APPELLANT,
v.
TRAVELERS INDEMNITY COMPANY OF ILLINOIS (T.I.L.), INDIVIDUALLY AND D/B/A THE TRAVELERS COMPANIES, WEBSTER M. GRIMM AND C.I.A.P.N.J., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 28, 1994.
Decided November 4, 1994.
Before Judges GAULKIN, BAIME and KESTIN.
Brotman & Graziano, attorneys for appellant (David R. Oakley, on the brief).
*237 Kenney & Kearney, attorneys for respondent The Travelers Indemnity Company (Michele M. Fox, of counsel; Ralph R. Smith, 3rd, on the brief).
Golden, Rothschild, Spagnola & Di Fazio, attorneys for respondent Webster H. Grimm (C. Edward Speidel, of counsel and on the brief).
Berlin, Kaplan, Dembling & Burke, attorneys for respondent New Jersey Automobile Insurance Plan (Marc L. Dembling, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
N.J.S.A. 17:28-1.9a provides that no person shall be liable in an action for damages due to a named insured's selection of a given level of motor vehicle insurance. The statute was intended to abrogate prior judicial decisions holding insurers, agents, and brokers liable for failing to advise their customers of the availability of additional underinsured and uninsured motorist coverage. At issue is whether the immunity granted by the statute applies to policies issued prior to its effective date, June 29, 1993. We hold that the immunity conferred by the statute extends to antecedent policies.
On April 3, 1990, plaintiff sustained injuries as a result of an automobile accident. At the time, plaintiff was driving a tow truck leased by her employer, Hamilton Auto Center. The vehicle was covered by a policy placed by Webster M. Grimm, a broker, through the New Jersey Automobile Insurance Plan (CIAPNJ). The policy was written by Travelers Indemnity Company in the amount of $300,000 liability with underinsured motorist coverage of $100,000. Plaintiff settled her case against the driver of the other vehicle for $100,000, and then instituted this action against Travelers, Grimm, and CIAPNJ, claiming that the defendants failed to advise Hamilton of the availability of additional underinsured motorist coverage. The Law Division dismissed plaintiff's *238 complaint on the ground that defendants were immune from damages pursuant to N.J.S.A. 17:28-1.9a. In reaching this conclusion, the Law Division determined that the statute was intended to apply to policies issued prior to its effective date. We agree and affirm.
At the outset, we acknowledge the general principle of statutory construction that favors the prospective application of legislation. See Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992); Twiss v. State Dept. of Treasury, 124 N.J. 461, 466, 591 A.2d 913 (1991); Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95, 577 A.2d 1239 (1990); Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981); Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974); La Parre v. YMCA of the Oranges, 30 N.J. 225, 229, 152 A.2d 340 (1959). The terms of a statute will not be given retroactive effect "unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied." Kopczynski v. County of Camden, 2 N.J. 419, 424, 66 A.2d 882 (1949). Undoubtedly, this principle expresses a sound rule of statutory interpretation. It is nonetheless only a rule of statutory construction. All such principles "have a single purpose  to aid the court in its quest for legislative intent." Rothman v. Rothman, 65 N.J. at 224, 320 A.2d 496. Where, as here, "supervening considerations clearly compel a contrary determination, this, like all other rules of statutory construction must give way." Ibid.; see also State v. Bey, 112 N.J. 45, 103, 548 A.2d 846 (1988), certif. denied, 130 N.J. 19, 611 A.2d 657 (1992); Brown v. State Dept. of Personnel, 257 N.J. Super. 84, 88-89, 607 A.2d 1354 (App.Div. 1992); Carnegie Bank v. Shalleck, 256 N.J. Super. 23, 39, 606 A.2d 389 (App.Div. 1992); Grippo v. Schrenell & Co., 223 N.J. Super. 154, 161-62, 538 A.2d 404 (App.Div. 1988), 2 Norman J. Singer Sutherland, Statutory Construction § 41.11 at 410-11 and § 41.05 at 366.
We begin with the operative statutory language. N.J.S.A. 17:28-1.9 provides:

*239 a. Notwithstanding any other provision of law to the contrary, no person, including, but not limited to, an insurer, an insurance producer, as defined in section 2 of P.L. 1987, c. 293 (C.17:22A-2), a servicing carrier or non-insurer servicing carrier acting in that capacity pursuant to P.L. 1983, c. 65 (C.17:30E-1 et al.) or section 88 of P.L. 1990, c. 8 (C.17:33B-11), the New Jersey Automobile Full Insurance Underwriting Association created pursuant to section 16 of P.L. 1983, c. 65 (C.17:30E-4), the Market Transition Facility created pursuant to section 88 of P.L. 1990, c. 8 (C.17:33B-11), and any plan established pursuant to section 1 of P.L. 1970, c. 215 (C.17:29D-1), shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage. Nothing in this section shall be deemed to grant immunity to any person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.
b. The coverage selection form required pursuant to section 17 of P.L. 1983, c. 362 (C39:6A-23) shall contain an acknowledgement by the named insured that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained to him and a statement that no person, including, but not limited to, an insurer, an insurance producer, as defined in section 2 of P.L. 1987, c. 293 (C.17:22A-2), a servicing carrier or non-insurer servicing carrier acting in that capacity pursuant to P.L. 1983, c. 65 (C.17:30E-1 et al.) or section 88 of P.L. 1990, c. 8 (C.17:33B-11), the New Jersey Automobile Full Insurance Underwriting Association created pursuant to section 16 of P.L. 1983, c. 65 (C.17:30E-4), the Market Transition Facility created pursuant to section 88 of P.L. 1990, c. 8 (C.17:33B-11), and any plan established pursuant to section 1 of P.L. 1970, c. 215 (C.17:29D-1), shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage, except for that person causing damage as the result of his willful, wanton or grossly negligent act of commission or omission.
Critical to our disposition of the issue presented is the Legislature's reference to the New Jersey Automobile Full Insurance Underwriting Association (JUA) and the Market Transition Facility (MTF). It is significant that these agencies stopped writing insurance policies well in advance of the effective date of N.J.S.A. 17:28-1.9.[1] However, the Legislature specifically granted these entities immunity under this statute. Clearly, the Legislature *240 would not have made specific reference to those defunct organizations unless it intended the statutory immunity to extend to claims arising prior to June 29, 1993. The JUA and the MTF would not need protection from claims arising out of policies written after their demise. Accordingly, the only sensible interpretation of N.J.S.A. 17:28-1.9a is that the Legislature intended the statute to apply to transactions which occurred prior to its effective date.
This implied expression of retrospective intent is also impelled by the pertinent legislative history. Uninsured motorist coverage was introduced in New Jersey with the enactment of L. 1983, c. 65, § 5 and L. 1983, c. 362, § 1 which amended N.J.S.A. 17:28-1.1. Prior to these amendments, insurers were only required to provide optional uninsured motorist coverage in the amount of $15,000/$30,000 for bodily injury. The amendments to N.J.S.A. 17:28-1.1 mandated a minimum of $15,000/$30,000 for bodily injury. N.J.S.A. 17:28-1.1(a). In addition, insurers were required to offer optional underinsured motorist coverage up to $250,000/$500,000 for bodily injury. N.J.S.A. 17:28-1.1(b). However, neither uninsured nor underinsured motorist coverage could be written in amounts larger than the liability limits chosen by the insured.
In order to implement these changes, the Legislature required that a written notice, buyer's guide, and coverage selection form be sent for policies in force on July 1, 1984 and, thereafter, to accompany any notice of renewal. N.J.S.A. 39:6A-23(a), (c). The statute also required the Commissioner of Insurance to promulgate regulations to insure that the buyer's guide and written notice fairly apprise customers of all possible coverage options and limits. N.J.S.A. 39:6A-23(c). The legislative and regulatory design "was to create a milieu in which New Jersey insureds would inform themselves about available coverage from the written notice and buyer's guide and make intelligent choices based on that information, asking for their agent's/broker's assistance if they had questions." Avery v. Arthur E. Armitage Agency, 242 N.J. Super. 293, 305, 576 A.2d 907 (App.Div. 1990).
*241 Following in the wake of this legislation and its implementing regulations came a series of claims in which insureds alleged that they received improper or insufficient advice from insurance agents or brokers concerning the options available to them. In a series of decisions, both the Supreme Court and the Appellate Division held that brokers and agents were required to inform insureds of available coverage and were obliged to exercise reasonable skill and good faith in advising their customers. See Weinisch v. Sawyer, 123 N.J. 333, 340, 587 A.2d 615 (1991); Avery v. Arthur E. Armitage Agency, 242 N.J. Super. at 299, 576 A.2d 907. However, these cases were fact sensitive, and a myriad of questions arose as to whether an agent or broker had an affirmative, independent duty to communicate with an insured regarding the availability of added underinsured coverage. Compare Pinto v. Garretson, 237 N.J. Super. 444, 450, 568 A.2d 119 (App.Div. 1989); Bruce v. James P. MacLean Firm, 238 N.J. Super. 501, 508, 570 A.2d 49 (Law Div.), aff'd, 238 N.J. Super. 408, 570 A.2d 1 (App.Div. 1989) with Wasserman v. Wharton, Lyon & Lyon, 223 N.J. Super. 394, 405-07, 538 A.2d 1270 (App.Div. 1988); Sobotor v. Prudential Property & Cas. Ins. Co., 200 N.J. Super. 333, 337-42, 491 A.2d 737 (App.Div. 1984). Additional issues were raised regarding whether a "direct writing" insurer owed a duty to its insured beyond mailing the coverage selection form, written notice, and buyer's guide. Andriani v. N.J. Mfs. Ins. Co., 245 N.J. Super. 252, 256-57, 584 A.2d 875 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991). Other questions addressed what type of initiating inquiry from the insured might trigger an agent or broker's duty to provide advice concerning the availability of additional uninsured or underinsured motorist options. Avery v. Arthur E. Armitage Agency, 242 N.J. Super. at 301-02, 576 A.2d 907. So too, the question of indemnity between brokers and insurers spawned numerous seemingly inconsistent decisions. See, e.g., Johnson v. Mac Millan, 233 N.J. Super. 56, 62-63, 558 A.2d 24 (App.Div. 1989); Mazur v. Selected Risks Ins. Co., 233 N.J. Super. 219, 226-27, 558 A.2d 508 (App.Div. 1989); Regino v. Aetna Cas. & Sur. Co., 200 N.J. Super. 94, 99, 490 A.2d 362 *242 (App.Div. 1985). Although several of these issues were ultimately resolved by our Supreme Court in Weinisch v. Sawyer, 123 N.J. 333, 587 A.2d 615, other questions lingered.
N.J.S.A. 17:28-1.9a was intended to put an immediate end to this explosion of litigation by providing blanket immunity except in cases of willful, wanton, or gross negligence. See Statement of the Senate Commerce Committee, Senate No. 804 (1992). As originally introduced, the bill contained only the immunity provision presently set forth in N.J.S.A. 17:28-1.9a. The Senate Commerce Committee added subsection b, which requires the coverage selection form to include an acknowledgment by the named insured that all options have been explained to him and also a statement describing the immunity tracking the language set forth in subsection a. N.J.S.A. 17:28-1.9b. It is clear that subsection b is prospective only. However, we are satisfied that the Legislature enacted subsection a in response to the muddled and contentious history of litigation we have described and that it intended the immunity provision to extend to all antecedent policies.
Accordingly, we are in accord with the Law Division's conclusion that all of the defendants are immune from damages. The order dismissing plaintiff's complaint is, therefore, affirmed.
KESTIN, J.A.D. (dissenting).
The only facial basis for deciding that N.J.S.A. 17:28-1.9a should be understood to have retroactive effect is that the New Jersey Automobile Full Insurance Underwriting Association (NJAFIUA) and the Market Transition Facility (MTF), both of which ceased insuring drivers long before the statute became effective, share in the immunity which the statute confers. There are better reasons for seeing that provision as having prospective operation only.
The best is that the Legislature did not clearly state retroactivity to be its intendment. A venerable precept of statutory construction posits that "statutes should not be given retrospective application unless such an intention is manifested by the Legislature *243 in clear terms." Skulski v. Nolan, 68 N.J. 179, 202, 343 A.2d 721 (1975). See also Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992); Twiss v. State Dept. of Treasury, 124 N.J. 461, 466, 591 A.2d 913 (1991) (retrospective application determined); Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95, 577 A.2d 1239 (1990); South Hamilton Assoc. v. Mayor & Council of Morristown, 99 N.J. 437, 444, 493 A.2d 523 (1985); Gibbons v. Gibbons, 86 N.J. 515, 521-24, 432 A.2d 80 (1981) (retrospective application determined); Peper v. Princeton University Bd. of Trustees, 77 N.J. 55, 73, 389 A.2d 465 (1978); Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974) (retrospective application determined); Alongi v. Schatzman, 57 N.J. 564, 578, 274 A.2d 33 (1971); Nickell v. Gall, 49 N.J. 186, 189, 229 A.2d 511 (1967), La Parre v. Y.M.C.A., 30 N.J. 225, 229, 152 A.2d 340 (1959); In re Glen Rock, 25 N.J. 241, 249, 135 A.2d 506 (1957); Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 381, 102 A.2d 587 (1954); Nichols v. Bd. of Education, 9 N.J. 241, 248, 87 A.2d 894 (1952); Kopczynski v. County of Camden, 2 N.J. 419, 424, 66 A.2d 882 (1949); Burdett v. Municipal Employees Pension Comm., 129 N.J.L. 70, 72, 28 A.2d 93 (E. & A. 1942); Wittes v. Repko, 107 N.J. Eq. 132, 134, 151 A. 850 (E. & A. 1930); Frelinghuysen v. Town of Morristown, 77 N.J.L. 493, 496, 72 A. 2 (E. & A. 1909); Citizens' Gas Light Co. v. Alden, 44 N.J.L. 648, 654 (E. & A. 1882); Williamson v. Southern R.R., 29 N.J. Eq. 311, 333-34 (E. & A. 1878); City of Elizabeth v. Hill, 39 N.J.L. 555, 558 (Sup.Ct. 1877); Den ex dem. Berdan v. Van Riper, 16 N.J.L. 7, 14-15 (Sup.Ct. 1837). And see United States v. Heth, 7 U.S. (3 Cranch) 399, 412-13, 2 L.Ed. 479, 483 (1806); 2 Sutherland, Statutes and Statutory Construction, § 41.04 (Singer ed. 1993).
This principle has been variously formulated "to [disfavor] retrospective operation unless [the words in a statute] are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied." Kopczynski v. County of Camden, supra, 2 N.J. at 424, 66 A.2d 882, quoted in 2 Sutherland, supra, at § 41.04, p. 350. To some extent, the principle can be seen as begging the question, for *244 courts are able to give effect to the intention of a legislature only to the extent the legislative design is discernible.
The statute before us does not contain an explicit legislative direction in respect of the prospectivity/retrospectivity question. We may, however, infer legislative intent from the language of a statute, the mechanics of its operation, or such legislative history as may be available. Gibbons v. Gibbons, supra, 86 N.J. at 522, 432 A.2d 80. A focus on the language of the statute discloses, as the majority observes, that although mention of the NJAFIUA and the MTF in subsection (a) suggests retrospective application, the terms used in subsection (b) can only be seen as prospective in operation. To accept the argument that the Legislature intended the immunity conferred in subsection (a) to be retroactive, while the conduct required in subsection (b) to implement that immunity can only apply prospectively is to posit a facial disharmony which, by definition, is at variance with our responsibility "to give [the statute] the most sensible interpretation." Ibid. As for any perspective afforded by legislative history, although it appears that the two subsections had different origins, they did, after all, come together in a single enactment. To interpret two similar and operationally related provisions, contemporaneously enacted, to have a different inferred application in one subsection than patently characterizes the other is to strain logic and to suggest that the Legislature enacted a word puzzle rather than an effectuation of public policy.
This implicates another reason why we should favor an application of the rule of prospectivity rather than the exception, retrospectivity. To interpret subsection (a) as the majority does, renders the fair notice policy embodied in subsection (b) a nullity, at least with respect to all contracts of insurance entered into before the effective date of the statute.[*] We should normally *245 avoid interpretations that nullify any provision of a statute. Moore v. Johnson, 85 N.J.L. 40, 42, 88 A. 699 (Sup.Ct. 1913).
The best that can be said for this statutory conundrum is that the inferred design of subsection (a) taken along with the clear sense of its correlative provision, subsection (b), results in an ambiguity regarding the Legislature's intendment with respect to the prospectivity/retrospectivity issue. Given the impenetrability of the problem, we should not guess at what the Legislature intended, or, worse, apply our own preference. It may well be that the problem that confronts us was not apprehended by the Legislature at all.
Instead of speculating about what the Legislature intended when two sections of a statute might be seen to betoken inconsistent designs in this regard, we should, by way of a default position, apply the general principle of prospective operation just because it is a general principle that governs when the Legislature has furnished insufficient guidance on the question, see Phillips v. Curiale, supra, 128 N.J. at 619, 608 A.2d 895; and because principled interpretation, as distinguished from divination, promotes stability and respect for the law. More specifically with regard to this statute, we should adhere to the principle of prospectivity because it renders the two subsections consistent rather than inconsistent; and because such a view in this case avoids substituting a new standard of immunity for an older standard of amenability to suit before those affected by the change have had any opportunity to learn about it and, possibly, to modify their conduct or expectations because of it. Twiss v. State Dept. of Treasury, supra, 124 N.J. at 466, 591 A.2d 913.
*246 I would reverse the trial court's decision and remand the matter for trial.
NOTES
[1] The JUA ceased writing policies on September 30, 1990, and the MTF stopped issuing policies on September 30, 1992.
[*] Subsection (b) requires that an insured be notified, at the time coverage is contracted for, of the immunity conferred by subsection (a). The statute, however, does not expressly establish a sanction to be applied to the insurer that does not comply with the notification requirement. Unavailability of the immunity might be one such sanction. If that be so, then there can be no clear public policy basis for applying the benefit of the immunity to those who did not provide the notification before the statute was enacted. If any insurers, including the NJAFIUA and the MTF, were attempting to limit the scope of their liability by such notification even before the statute was adopted, their inclusion in an otherwise prospectively oriented provision would be explained. The record before us contains no information in this regard.