695 A.2d 283

SCOTT AVERY, PLAINTIFF–APPELLANT, v. JEFFREY WYSOCKI AND AMICA MUTUAL INSURANCE COMPANY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 15, 1997—Decided May 2, 1997.

Before Judges PRESSLER and STERN.

*Barry G. Leveen* argued the cause for appellant.

*Daniel J. Pomeroy* argued the cause for respondent Amica Insurance Company (*Mortenson and Pomeroy*, attorneys; *Mr. Pomeroy* and *Karen E. Heller*, on the brief).

Respondent Jeffrey Wysocki did not file a brief.

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Plaintiff Scott Avery appeals on leave granted from a partial summary judgment dismissing his claim against defendant Amica Mutual Insurance Company for reformation of the uninsured/underinsured motorist (UM/UIM) coverage of the automobile liability policy it issued to him. We reverse.

This much is undisputed. Plaintiff had originally purchased the vehicle, a Volkswagen Scirocco, in 1986. Sometime thereafter, because the vehicle was being used in his father's business, he transferred title to the vehicle. The vehicle was then insured by defendant Amica under a business policy. On October 18, 1991, title was transferred back to plaintiff, who was intending to use the vehicle primarily as his personal automobile. Needing to obtain insurance coverage, he telephoned Amica and spoke with one of its underwriters, Henry L. Fowks. Fowks agreed to orally bind coverage and apparently discussed various coverage options with plaintiff. Fowks' notes of the conversation showed liability coverage of $300,000 and a deductible of $500 both for the comprehensive and the collision coverage. There is no indication in the notes of any UM/UIM coverage and no reference to the various personal injury protection (PIP) options. Fowks then wrote a letter to plaintiff bearing the same date, October 18, 1991, advising him that a confirmation of coverage was enclosed as well as an information digest, application form and coverage selection form. The confirmation of coverage was consistent with Fowks' handwritten notes except that it added UM/UIM coverage of $35,000.

On the following day, plaintiff was hit by a motorist while riding his bicycle. Among the injuries plaintiff sustained was a fractured left patella. He was taken from the scene of the accident to a hospital where he remained for four days. Although the vehicle that hit him fled the scene, plaintiff thought he remembered its

license plate number. His trace of that license number indicated that the owner of the vehicle so registered was defendant Jeffrey Wysocki. Plaintiff then went to the address of the registered owner, a house owned by defendant Myron D. Wysocki. Plaintiff thereafter watched the house and identified a man leaving it as the driver of the vehicle that had struck him. He was unable, however, to determine if the man was Jeffrey Wysocki or Myron D. Wysocki or, indeed, a third person. Apparently the Wysockis both deny having been involved in plaintiff's accident.

In any event, on plaintiff's return home from the hospital, he eventually found Amica's correspondence dated October 18, 1991, which had not reached him before the accident. He returned the completed coverage selection form, which he signed, on November 1, 1991. The coverages indicated by the form were substantially the same as the earlier confirmation of coverage, including UM/UIM in the amount of $35,000. Oddly, although plaintiff signed the coverage selection form on November 1, 1991, plaintiff's attorney produced, at plaintiff's deposition, a document he obtained from Amica's files during the course of discovery. The document was a completed but unsigned coverage selection form bearing a fax date of October 23, 1991. That copy of the form, annexed to plaintiff's reply brief, appears to be an exact copy of the coverage selection form sent by plaintiff to Amica but without his signature.

Plaintiff instituted this action against the Wysockis based on automobile negligence principles and against Amica. His claim against Amica was for reformation of the UM/UIM coverage on the ground that Amica's agent, Fowks, had negligently failed to explain those coverages to him and his options with respect thereto. Had he understood the nature of UM/UIM coverage, he contends, he would have opted for the same amount of coverage as the liability coverage.

Amica successfully moved for partial summary judgment dismissing the reformation claim against it. The motion judge relied

on *N.J.S.A.* 17:28–1.9,[1] which accords insurance carriers and their agents, among others, immunity from suit based on the insured's election of a specific level of coverage, if within lawful limits, except where the conduct is willful, wanton or grossly negligent. The judge did not, however, address the question of whether the immunity afforded by *N.J.S.A.* 17:28–1.9a is available if the insured has not signed a coverage selection form as required by *N.J.S.A.* 17:28–1.9b.

We are satisfied that the insured's completion and execution of the coverage selection form is a condition of the grant of immunity by subsection a. It is plain that the purpose of the immunity is to shift the responsibility for coverage selection from the insurer to the insured. It is also plain that under the legislative scheme, the mechanism by which the insured is enabled to make an informed coverage choice and thereby to protect himself is the coverage selection form mandated by *N.J.S.A.* 39:6A–23. *See, e.g., Avery v. Arthur E. Armitage Agency,* 242 *N.J.Super.* 293, 305, 576 *A.*2d 907 (App.Div.1990). We think it clear that without this protection, the grant of the immunity by *N.J.S.A.* 17:28–1.9a would have far harsher consequences than the Legislature intended. That is to say, the subsection a immunity is based on the assumption that the insurer will have complied with the dictates of *N.J.S.A.* 39:6A–23 by providing the insured with an adequate description of available coverages and their limits.

We further point out that *N.J.S.A.* 17:28–1.9b, added to the bill by the Senate Commerce Committee, requires, as a condition of the immunity, not only that the insured execute the coverage selection form but that he also acknowledge therein in writing "that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained to him" and that he understands the immunity afforded by subsection a.

---

[1] Although *N.J.S.A.* 17:28–1.9. was adopted after the date of the issuance of this insurance policy, the statute has been held to accord retroactive immunity. *Strube v. Travelers Indemn. Co.,* 277 *N.J.Super.* 236, 649 *A.*2d 624 (App.Div.1994), *aff'd o.b.,* 142 *N.J.* 570, 667 *A.*2d 188 (1995).

We have no doubt that the impetus for this additional protection for the insured and this additional condition on the grant of the immunity was the Legislature's recognition that the great volume of coverage selection disputes involves UM and UIM coverage.[2] *See, e.g., Strube, supra,* 277 *N.J.Super.* at 241–242, 649 *A.*2d 624.

We recognize, as indeed we pointed out in *Strube, id.* at 242, 649 *A.*2d 624, that while subsection a was retroactive in effect, subsection b, requiring specific affirmative action, could be only prospective. It is, therefore, obvious that as to those policies issued prior to the effective date of *N.J.S.A.* 17:28–1.9, namely June 29, 1993, the availability of the immunity accorded by subsection a cannot be conditioned on compliance with the special coverage selection form requirements of subsection b. This, of course, is such a policy. But that does not end the matter. Since the insured's execution of the coverage selection form is, in our view, the *sine qua non* as well as the rational underpinning of the immunity, it seems to us clear that even though the special requirements of subsection b do not apply to pre-statute policies, the general requirement for a coverage selection form as mandated by *N.J.S.A.* 39:6A–23 does apply. In sum, it is our conclusion that in order for the subsection a immunity to apply to policies issued on and after the effective date of *N.J.S.A.* 17:28–1.9, the special coverage selection requirements of subsection b must be met. If the policy was issued prior to that date, the general coverage selection requirements must be met. Thus, we hold that the immunity does not apply to coverage selections made without benefit of the coverage selection form and the insured's execution thereof.

Here, it is not disputed that the accident occurred prior to the insured's receipt and execution of the coverage selection form. The selection, if any, was made by the insured during a telephone

---

[2] Unfortunately, the *Statement of the Senate Commerce Committee* to Senate No. 804 (1992) merely describes this addition to the statute without further explanation.

conversation. General principles of negligence, duty, and proximate cause would therefore apply to plaintiff's reformation action. *See, e.g., Weinisch v. Sawyer,* 123 *N.J.* 333, 340, 587 *A.*2d 615 (1991); *Avery, supra,* 242 *N.J.Super.* at 299, 576 *A.*2d 907. Amica argues that plaintiff should be bound by the UM/UIM limits selected in the later executed coverage selection form since that form constitutes a ratification by him of his original selections.

While there may be merit in Amica's argument, we are nevertheless satisfied that a question of fact is apparent, precluding the grant to it of summary judgment dismissing the reformation count. Questions are obviously raised by the copy of the coverage selection form in the company's files fax-dated a week before plaintiff's actual execution of the form. Plaintiff also claims that despite any misunderstanding on his part respecting the available coverage and its limits—misunderstanding attributable to Amica's breach of its duty to him of explaining the coverages—he regarded himself as bound in some way by the coverage confirmation form. In other words, the coverage selection form may not, as a matter of fact, constitute a ratification if the UM/UIM coverage was never expressly explained or offered to him during the course of the original telephone call and he checked off the coverage selection form—if in fact he did—based on his misunderstanding of the effect of the confirmation of coverage.

We recognize the salutary purposes of the immunity. We also appreciate, however, that insistence on meticulous compliance with the applicable coverage selection form requirements is the legislative trade-off, as it were, for according the immunity. Whether those requirements were met here raises factual questions precluding summary judgment.

The partial summary judgment appealed from is reversed and we remand for further proceedings consistent with this opinion.