934 A.2d 678

VINCENT F. BALDASSANO, PLAINTIFF–APPELLANT
v. HIGH POINT INSURANCE COMPANY,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 17, 2007—Decided November 8, 2007.

Before Judges PARKER, R.B. COLEMAN and LYONS.

*Mazie Slater Katz & Freeman,* attorneys for appellant (*Adam M. Slater,* of counsel and on the brief).

*Law Office of John E. Madden,* attorneys for respondent (*Jane C. Nehila,* of counsel and on the brief).

The opinion of the court was delivered by

PARKER, J.A.D.

Plaintiff Vincent F. Baldassano appeals from two orders entered on December 1, 2006: one order dismissed the complaint and all cross-claims against High Point. The second order denied plaintiff's cross-motion for partial summary judgment and granted defendant High Point Insurance Company's (High Point) motion for summary judgment.

On December 24, 2004, plaintiff was a passenger in a car involved in a one vehicle accident. He settled with the driver for the driver's $100,000 policy limit. He claimed his damages exceeded that amount, however, and made an underinsured motorist (UIM) claim under his High Point policy. The claim was denied because plaintiff's UIM limit of $100,000 per bodily injury had been met by the driver's insurance policy.

Plaintiff maintains that in 1998 when he first purchased the insurance, High Point's agent failed to advise him of the limit on UIM coverage and failed to explain that various other limits were available. The agent had previously provided coverage for plaintiff's family and told plaintiff that he would "put him on" the same type of auto insurance policy that his parents had. Plaintiff agreed. Plaintiff claims that he relied on the agent's representation in purchasing the policy.

Plaintiff further maintains that in 1998 the agent mailed him a coverage selection form with the boxes already checked, reflecting $100,000/300,000 limits of liability and UIM coverage. The form included an "Insured's Statement" on the signature page that contained the following paragraphs.[1]

---

[1] The statement is reproduced here with the same emphasis by bold-face type and capital letters as in the original.

**Insured's Statement**

I have read the Buyer's Guide outlining the coverage options available to me. I acknowledge that the limits available for Uninsured/Underinsured Motorists Coverage have been explained to me. My choices are shown above. I agree that each of these choices will apply for all vehicles insured by my policy and to each subsequent renewal, continuation, replacement or amendment until Prudential or a representative with Prudential's binding authority receives my request that a change be made. If I am a new policyholder, I understand that:

(a) If I do not make a written choice for Item 2, I will receive the Lawsuit Threshold option;

(b) If I carry Collision or Comprehensive coverage without making a written choice for Item 7 or Item 8, I will receive the $500 deductible; and

(c) If I do not make a written choice for the PIP health insurer option in Item 4, my auto insurer will be the primary health insurer for PIP medical expense benefits.

I understand that if this is a policy renewal and I do not complete choices, I will receive the same coverage as in my previous policy except when changes are required by a law becoming effective during the term of my previous policy.

I understand that these choices take effect in the following manner:

(1) For new polices the choices on this form are effective as of the coverage effective date shown on the New Business application.

(2) —— **Please check here if you wish this change to be effective when we renew your policy.** For changes upon renewal, the changes to be made on this form are effective on the date of the next policy renewal if postmarked or received by Prudential or by a representative with Prudential's binding authority prior to the renewal date.

(3) For mid-term policy changes, the choices on this form are effective one day after the Representative's signature date, but if illegible, the day of receipt of this form by Prudential or a representative with Prudential's binding authority.

**ANY PERSON WHO KNOWINGLY MAKES AN APPLICATION FOR MOTOR VEHICLE INSURANCE COVERAGE CONTAINING ANY STATEMENT THAT THE APPLICANT RESIDES OR IS DOMICILED IN THIS STATE WHEN, IN FACT, THAT APPLICANT RESIDES OR IS DOMICILED IN A STATE OTHER THAN THIS STATE, IS SUBJECT TO CRIMINAL AND CIVIL PENALTIES.**

Whether I am a new or current policyholder, I understand that it is my responsibility to complete a new coverage selection form whenever I want to change my selections.

_____

(Signature of Named Insured)          (Date)

_____

(Address of Named Insured)

_____

(Daytime phone number)

Plaintiff claims that he did not read the coverage selection form or the Insured's Statement because the agent told him to "just sign and date it." He does not recall whether he received the buyer's guide with the forms in 1998, but he acknowledged that he never contacted the agent about the coverage or policy options. Plaintiff continued to renew his automobile coverage twelve times between 1998 and 2004 without any changes. He did not change his policy limits or make any inquiry about the type or amount of coverage available at any time during this six-year period, even when he contacted the agent twice to transfer coverage to new vehicles: once in 2000 and again in 2003.

At the time the coverage was transferred to the new vehicles, plaintiff recalled receiving some materials from the carrier but did not remember whether a new coverage selection form or buyer's guide was included. Although he remembered receiving renewal packages, he could not recall what materials, other than the insurance cards, were included in the packages. The agent testified that when the policy was renewed every six months, "a declaration page listing coverages, a coverage selection form list[ing] available coverage options, and a New Jersey Auto Insurance Buyer's Guide" were mailed to the insured as required by law.

On August 2, 2005, plaintiff filed a complaint alleging that High Point's agent negligently failed to advise him of "the availability of higher UIM limits, the nature of UIM insurance, and other important information." He contends that if he had been properly advised of the coverage choices and the availability of higher UIM coverage, he would have purchased it.

In deciding the cross-motions, the trial court focused on the coverage selection form which plaintiff admittedly received after the agent had checked the coverage selections. The trial court found that, although plaintiff maintained that in 1998 he never received a buyer's guide explaining the various coverages available and the agent told him to sign the forms without reading them, he

renewed the policy twelve times without changing coverage or inquiring whether other options were available.

In this appeal, plaintiff argues that (1) the trial court erred in finding the carrier immune from liability for the agent's failure to explain additional coverage; (2) High Point is liable for the agent's failure to give plaintiff a buyer's guide; (3) the trial court was swayed by its own factual and credibility determinations; (4) the matter should be remanded to a different trial judge.

■ Plaintiff first contends that defendant failed to comply with the statutory requirements to qualify for immunity under *N.J.S.A.* 17:28–1.9 because (1) the agent, not the insured, selected the level of UIM coverage on the coverage selection form; and (2) defendant did not provide a buyer's guide to plaintiff when plaintiff filled out the insurance application. Defendant responds that it met the statutory requirements for immunity because (1) the insured was not required to check the boxes himself if he completed and executed the coverage selection form; and (2) new coverage selection forms and buyer's guides were sent to defendant with each of the twelve renewals.

Except in cases of willful, wanton, or gross negligence, an insurer is immune from an action for damages arising from an insured's election of motor vehicle insurance coverage limits "as long as those limits provide at least the minimum coverage required by law." *N.J.S.A.* 17:28–1.9(a). This statutory immunity was "intended to abrogate prior judicial decisions holding insurers, agents and brokers liable for failing to advise their customers of the availability of additional underinsured and uninsured motorist coverage." *Strube v. Travelers Indem. Co. of Ill.,* 277 *N.J.Super.* 236, 237, 649 *A.*2d 624 (App.Div.1994). The purpose of the statute was to end the "explosion of litigation by providing blanket immunity, except in cases of willful, wanton, or gross negligence." *Id.* at 242, 649 *A.*2d 624.

■ To be protected under the statute, an insurer must show that: (1) the named insured's coverage limits were at least the

minimum coverage required by law; (2) the named insured's alleged damages were not caused by a "willful, wanton or grossly negligent act of commission or omission;" and (3) the carrier complied with the coverage selection requirements of *N.J.S.A.* 17:28–1.9(b). *Pizzullo v. New Jersey Mfrs. Ins. Co.,* 391 *N.J.Super.* 113, 118, 917 *A.2d* 276 (App.Div.2007); *see Avery v. Wysocki,* 302 *N.J.Super.* 186, 191, 695 *A.2d* 283 (App.Div.1997) (holding that "the special coverage selection requirements of [*N.J.S.A.* 17:28–1.9(b)] must be met" before affording immunity under *N.J.S.A.* 17:28–1.9(a)). The insurer must demonstrate compliance with all three statutory requirements before being entitled to immunity as a matter of law. *Pizzullo, supra,* 391 *N.J.Super.* at 124, 917 *A.2d* 276. Plaintiff claims that defendant failed to comply with the third prong, the coverage selection requirements.

The statutory immunity afforded an insurer "is based on the assumption that the insurer will have complied with the dictates of *N.J.S.A.* 39:6A–23 by providing the insured with an adequate description of available coverages and their limits." *Avery, supra,* 302 *N.J.Super.* at 190, 695 *A.2d* 283; *accord Rapp v. Awany,* 205 *F.Supp.2d* 279, 285–86 (D.N.J.2002) (holding that the requirements of *N.J.S.A.* 39:6A–23 "are preconditions to qualifying for immunity under *N.J.S.A.* 17:28–1.9"). Pursuant to the statute, "a written notice identifying [all coverage information] and containing a buyer's guide and a coverage selection form" must accompany either a new or renewal automobile insurance policy application.[2] *N.J.S.A.* 39:6A–23(a) and (c). Proof of mailing the

---

[2] The Department of Insurance regulations address the issue of personal passenger automobile applications and the materials insurers are required to provide. When an automobile policy is bound or renewed over the phone, the insurer must mail to the insured the buyer's guide, a *completed* coverage selection form showing the coverage choices made by the insured and an Automobile Insurance Consumer Bill of Rights within five business days of the conversation. *N.J.A.C.* 11:3–15.4(a)(3) (emphasis added). The rule applies to new and renewal policies issued on or after July 13, 2004 and therefore, would not apply to plaintiff's policies bound prior to this date. *See* 36 *N.J.R.* 4207(a) (Sept. 20, 2004).

required materials, not the insured's receipt, establishes the presumption of receipt. *Bruce v. James P. MacLean Firm,* 238 *N.J.Super.* 501, 505–06, 570 *A.2d* 49 (Law Div.1989). To establish proof of mailing, the insurer must provide evidence of the custom of mailing combined with reliable testimony of the person charged with the duty of carrying out the custom. *Id.* at 505, 570 *A.2d* 49.

The statute provides that "[t]he applicant shall indicate the options elected on the coverage selection form which shall be signed and returned to the insurer." *N.J.S.A.* 39:6A–23(a). Upon a policy renewal, the insured is not obligated to return the completed and signed coverage unless the insured elects to alter the coverage. *N.J.A.C.* 11:3–15.7; *Bruce, supra,* 238 *N.J.Super.* at 506, 570 *A.2d* 49 (holding that an insured's failure to return a properly executed selection form on renewal should be construed as the insured's intent to retain the same coverage without change). "A properly completed and executed coverage selection form shall be prima facie evidence of the named insured's knowing election or rejection of any option." *N.J.S.A.* 39:6A–23(e).

Here, in granting defendant's motion for summary judgment, the trial court held that

Completion and execution, .. in the context of this statute, refers to a document that is completely filled out and signed by the insured. And that's the only way this makes sense because an insured's signature is verifiable. An insured's checks are not. So let's dispense with who makes the checks in the boxes.... When the insured signs an application with the boxes checked, it is completed.... There's no case that says that an insured himself must complete — must fill out the form. It says complete and execute.

The trial court relied upon *Strube* in which we noted that, "[t]he legislative and regulatory design 'was to create a milieu, in which New Jersey insureds would inform themselves about available coverage from the written notice and buyer's guide and make intelligent choices based on that information.' " 277 *N.J.Super.* at 240, 649 *A.2d* 624 (citing *Avery v. Arthur E. Armitage Agency,* 242 *N.J.Super.* 293, 305, 576 *A.2d* 907 (App.Div.1990)).

Plaintiff contends that the court's reliance upon *Strube* was erroneous. He argues that we should look to *Avery,* because

there we held that *N.J.S.A.* 17:28–1.9 requires a two-step process to effectuate the coverage selection form: (1) the insured, not the agent, must "complete" the coverage selection form by physically marking off the limits that apply; and (2) the insured must "execute" the coverage selection form by signing it.

*Avery* differs substantially from this case. There, the defendant-insurer bound automobile coverage in a telephone conversation after discussing the various coverage options with the plaintiff-insured. 302 *N.J.Super.* at 188, 695 *A.*2d 283. The following day, the plaintiff was hit by a car while riding his bicycle. *Ibid.* At the time of the accident, the plaintiff had not received the coverage selection form, checked off UIM limits or signed it. *Ibid.* Fourteen days after the accident, however, the insured completed the coverage selection form that had previously been mailed to him by selecting $35,000 for UM/UIM coverage and mailing it back to the defendant. *Id.* at 189, 695 *A.*2d 283. The plaintiff then contended that if he had understood the UM/UIM coverage he would have chosen a higher UM/UIM limit to match the $300,000 liability coverage he had chosen. *Ibid.*

We held there that "the immunity does not apply to coverage selections made without the benefit of the coverage selection form and the insured's execution thereof." *Id.* at 191, 695 *A.*2d 283. We explained that statutory immunity is conditioned upon "the insured's completion and execution of the coverage selection form." *Id.* at 190, 695 *A.*2d 283. Moreover, "the insured's execution of the coverage selection form is . . . the *sine qua non* . . . of the immunity." *Id.* at 191, 695 *A.*2d 283.

The important distinction between *Avery* and this case is that in *Avery*, the insured had not yet received or signed the coverage selection form when the accident occurred. *Id.* at 188, 695 *A.*2d 283. Here, plaintiff not only signed the coverage selection form, he received no fewer than twelve coverage selection forms and buyer's guides for each policy renewal. When asked during his deposition whether he had received materials other than the coverage selection form with the renewals, plaintiff responded: "I

may have ... I don't remember specifically what they were titled." We are satisfied that plaintiff's signing the form with the coverage limits selected by the agent and his returning the form to the agent constituted completion and execution of the coverage selection form. *Ibid.*

We have carefully considered plaintiff's arguments in light of the applicable law and we are satisfied that summary judgment dismissing the complaint was properly granted. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995). We need not consider plaintiff's remaining arguments.

Affirmed.