NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4761-15T2

LLEDON JAMES and LURLINE
JAMES,

     Plaintiffs-Appellants,

v.

STATE FARM INSURANCE
COMPANY,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

January 18, 2019

APPELLATE DIVISION

Argued September 20, 2017 – Decided January 18, 2019

Before Judges Fuentes, Koblitz and Suter.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5051-15.

Jeffrey A. Rizika argued the cause for appellant (Javerbaum, Wurgaft, Hicks, Kahn, Wikstrom & Sinins, attorneys; Jeffrey A. Rizika, of counsel and on the brief).

Thomas W. Matthews argued the cause for respondent (Soriano, Henkel, Biehl & Matthews, attorneys; Thomas W. Matthews, on the brief).

David J. Karbasian argued the cause for amicus curiae New Jersey Association for Justice (Law Offices of David J. Karbasian, attorneys; David J. Karbasian, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Lynval James and plaintiff Lurline James are husband and wife. Their household includes their adult son plaintiff Lledon James, who was a licensed driver at all times relevant to this case.[1] Lynval purchased an automobile policy from defendant State Farm Insurance Company (State Farm) listing his wife and son as additional insureds. Plaintiffs claim that when Lynval purchased this policy from State Farm, he requested the maximum Personal Injury Protection (PIP) benefits of $250,000, and designated PIP as primary for medical expenses. After Lledon and his mother Lurline were involved in a car accident, plaintiffs claimed they discovered that the State Farm policy provided only $15,000 in PIP coverage and designated a private health insurance provider as the primary for PIP benefits.

Plaintiffs filed a verified complaint and an order to show cause seeking to reform the State Farm policy to provide the maximum $250,000 PIP benefits. Plaintiffs argued that the insurance policy as written was invalid because Lledon was covered by Medicaid, not by a private health insurance carrier. Plaintiffs

---

[1] Because plaintiffs have the same last name, we will refer to them by their first names. No disrespect is intended.

also alleged that State Farm's actions were willful, wanton, intentional, grossly negligent and in reckless disregard of their legal rights.

State Farm filed a responsive pleading in which it argued it was immune from civil liability as a matter of law pursuant to N.J.S.A. 17:28-1.9(a). Alternatively, State Farm claimed the PIP benefits coverage in the policy is the coverage Lynval requested at the time he purchased the policy. Plaintiffs filed a motion for partial summary judgment, requesting judicial reformation of the policy to reflect $250,000 in PIP coverage. State Farm cross-moved for summary judgment relying on the immunity provided by the Legislature in N.J.S.A. 17:28-1.9(a).

The Law Division judge assigned to this case granted summary judgement in favor of State Farm, finding it was immune from liability in this case under N.J.S.A. 17:28-1.9(a). The judge found the record indisputably showed Lynval signed the coverage selection form that contained a $15,000 limitation on PIP benefits coverage and designated the health insurance provider as primary. The motion judge also found that at the time Lynval requested this automobile policy from State Farm, he presented his private health insurance card and his declarations page from his previous automobile insurance policy with Geico, which provided coverage that "was exactly the same as what was selected from

State Farm in this case." Finally, the judge noted that Lynval renewed the State Farm automobile policy multiple times over a two-year period without objection or modification.

In light of these undisputed facts, the judge concluded plaintiffs had not presented evidence that shows State Farm's conduct in this case was willful, wanton, or grossly negligent. The judge held State Farm did not have a legal obligation to determine whether each member of an insured's household is covered by private health insurance at the time the insured signs the coverage selection form. The motion judge granted State Farm's cross-motion for summary judgment and dismissed plaintiffs' verified complaint with prejudice pursuant to the immunity provisions in N.J.S.A. 17:28-1.9(a).

In this appeal, plaintiffs argue the Law Division erred when it found State Farm immune from liability under N.J.S.A. 17:28-1.9(a). The New Jersey Association for Justice, appearing as amicus curiae, argues that plaintiffs' policy should be reformed to reflect the maximum PIP benefits available because State Farm's policy violates both State administrative regulations and the federal Medicare Secondary Payer Act. We reject these arguments and affirm substantially for the reasons expressed by the motion judge. We gather the following facts from the record developed before the Law Division.

A-4761-15T2

I

On October 11, 2012, Lynval obtained an auto insurance policy from Joseph Adamo's State Farm Insurance Office in North Arlington. This policy covered Lynval, his wife Lurline, and his adult son Lledon. Lynval gave the insurance agent: (1) a copy of the declarations page from an automobile insurance policy he had with Geico, which contained $15,000 in PIP coverage and a $2,500 deductible; and (2) his private health insurance card. Lynval's private health insurance did not cover his adult son or his wife. Lurline had her own health insurance through United Healthcare/Oxford; Lledon had health insurance with New Jersey Family Care, otherwise known as Medicaid.

During this initial encounter, Lynval claims he told the State Farm agent that he wanted standard PIP coverage of up to $250,000 and a $2,500 deductible. With respect to the primary coverage for payment of medical expenses, Lynval claims he told the agent he did not want his private health insurance to be the primary medical coverage provider for PIP. According to Lynval, the coverage selection form document was blank when he signed it. He claims he was presented with only the fifth page of the coverage selection form which contained only an area for signatures. He signed the form accordingly. Lynval also claims the remaining pages of the coverage selection form were filled out

by the State Farm agent after he signed the form and returned to work. Specifically, Lynval claims the handwriting on the top of the second page of the coverage selection form is not his handwriting; he also did not see this handwriting or the selections contained therein at the time he applied for insurance. Finally, Lynval claims he did not date the document that afternoon and the date reflected at the bottom of page five of the coverage selection form, (which is directly beneath his signature), is not in his handwriting.

State Farm refutes these allegations. According to State Farm, its agent provided Lynval with the New Jersey Standard Policy Coverage Selection form that outlines the various types of coverage available for an insured to select. The record shows Lynval signed the coverage selection form and selected $15,000 in PIP coverage with a $2,500 deductible, the same coverage he had previously with Geico. The coverage selection form also shows Lynval selected his personal health insurance policy as the primary for PIP by name and policy number. Lynval authorized this coverage arrangement, effective October 2012. State Farm emphasizes that this policy was automatically renewed several times from October 2012 to September 2014. The automatic renewal documents stated that the PIP medical expense benefit limit was $15,000 with a $2,500 deductible. The documents also included language instructing insureds that "[i]f

6

the above information is incomplete or inaccurate, or if you want to confirm the information we have in our records please contact your agent." Plaintiffs did not take any action to correct or modify this information.

On September 10, 2014, Lurline and Lledon were both injured in a car accident. Lynval reported the accident to State Farm and submitted a claim for PIP benefits. Although Lynval acknowledged that the policy's declarations page indicated he had selected the option with a $2,500 deductible and a $15,000 PIP limit, he refuted the accuracy of these limitations. Lynval alleged he actually selected $250,000 in PIP coverage. As provided by plaintiffs' automobile policy, State Farm initially referred medical expenses related to the accident to their private health insurance carriers. Later on, a State Farm representative learned that Lledon did not have private health insurance but was covered through New Jersey Family Care, or Medicaid. As required by N.J.S.A. 39:6A-4.3(f), State Farm thereafter provided Lledon with PIP benefits and processed his claims as though he did not have private health insurance at the time of the accident. State Farm applied a deductible of $3,250, comprised of the $2,500 deductible included in the policy and a $750 statutory penalty because Lledon did not have private health insurance. Ibid.

## II

The trial court must grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). To determine whether there is a genuine issue of material fact in dispute, we must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). We apply these same standards and review a trial court's order granting State Farm's motion for summary judgment de novo. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

After reviewing the record developed before the trial court against this standard of review, we conclude State Farm is entitled to summary judgment as a matter of law. N.J.S.A. 17:28-1.9 states in pertinent part:

> . . . . no . . . insurer . . . shall be liable in an action for
> damages on account of the election of a given level of

motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage. Nothing in this section shall be deemed to grant immunity to any [insurer] causing damage as the result of [its] willful, wanton or grossly negligent act of commission or omission.

b. The coverage selection form required pursuant to . . . [N.J.S.A. 39:6A-23] shall contain an acknowledgement by the named insured that the limits available to him for uninsured motorist coverage and underinsured motorist coverage have been explained to him and a statement that no . . . insurer . . . shall be liable in an action for damages on account of the election of a given level of motor vehicle insurance coverage by a named insured as long as those limits provide at least the minimum coverage required by law or on account of a named insured not electing to purchase underinsured motorist coverage, collision coverage or comprehensive coverage, except for that [insurer] causing damage as the result of [its] willful, wanton or grossly negligent act of commission or omission.

This statute was enacted "to abrogate prior judicial decisions holding insurers . . . liable for failing to advise their customers of the availability of additional underinsured and uninsured motorist coverage[,]" and to control the "explosion of litigation by providing blanket immunity except in cases of willful, wanton, or gross negligence." Strube v. Travelers Indem. Co., 277 N.J. Super. 236, 237, 242 (App. Div. 1994). To obtain immunity under N.J.S.A.

9

17:28-1.9, an insurer must demonstrate that (1) the named insured had at least the minimum coverage required by law; (2) the insurer did not cause the insured's alleged damages by any willful, wanton or grossly negligent act of commission or omission; and (3) the insurer complied with the coverage selection requirements of N.J.S.A. 17:28-1.9(b). Baldassano v. High Point Ins. Co., 396 N.J. Super. 448, 453-54 (App. Div. 2007). The insurer must also have obtained the insured's acknowledgement that the available coverage limits were explained to him or her, and that the insurer will not be liable for the insured's selection of coverage that was chosen in accordance with subsection (a) of the immunity statute. N.J.S.A. 17:28-1.9(b).

Here, State Farm has met the requirements for immunity under N.J.S.A. 17:28-1.9. Plaintiffs received the minimum coverage required by law, which was the same coverage they had with Geico. State Farm did not act in a willful, wanton, or grossly negligent manner and complied with the coverage selection requirements of N.J.S.A. 17:28-1.9(b).

N.J.S.A. 39:6A-23 sets forth the coverage selection requirements referenced in N.J.S.A. 17:28-1.9(b), which mandates that when an insured applies for a new policy, a "written notice identifying [all coverage information] and containing a buyer's guide and a coverage selection form" be provided to

10

the insured.  <u>Baldassano</u>, 396 N.J. Super. at 454 (citing N.J.S.A. 39:6A-23(a), (c)).  If an insured is applying for a new policy, the insured must select from the options available on the coverage selection form, and sign and return the form to the insurer.   N.J.S.A. 39:6A-23(a); N.J.A.C. 11:3-15.7(a).  It is immaterial which party physically completed the coverage selection form, as long as the coverage selection form was signed and returned by the insured.  <u>Baldassano</u>, 396 N.J. Super. at 457.  A completed and executed coverage selection form is "prima facie evidence of the named insured's knowing election or rejection of any option."  N.J.S.A. 39:6A-23(e).

Although it remains in dispute what coverage Lynval actually requested from State Farm, as the Supreme Court noted in <u>Puder</u>, self-serving assertions or conclusory statements in certifications are insufficient to overcome a motion for summary judgement.  <u>Puder v. Buechel</u>, 183 N.J. 428, 440-41 (2005).  Here, plaintiffs presented only Lynval's assertions in the form of a deposition and certifications as evidence that Lynval chose the maximum PIP coverage available.  By contrast, State Farm produced the completed coverage selection form, its insurance application page, the subsequent policy renewal documents of the policies issued from 2012 through 2014, its payment log, and Adamo's certification showing Lynval requested the $15,000 PIP coverage with a $2,500

deductible.

Plaintiffs contend that Lynval presented the Geico declarations page only in response to the State Farm agent's request to see what type of insurance policy he had at the time. However, Lynval claims he specifically told the agent that he did not want a policy similar to the original Geico policy. State Farm claims that at this initial meeting, Lynval requested the same coverage he had under his then-current insurance policy with Geico. The State Farm agent alleges that to avoid any misunderstanding, Lynval presented a copy of the declarations page of the Geico policy, which included a $15,000 PIP limit and a $2,500 deductible. During this meeting, Lynval signed the blank coverage selection form, but he did not personally select his coverage on the form because he was on his lunch break and had to quickly return to work. However, even if Lynval did not receive the coverage he allegedly requested, it is not disputed that he did not review the documents State Farm sent him that contained his insurance policy and automatic renewal forms. The only explanation Lynval offered for his failure to review these documents is that he is not "astute enough to go through" the forms.

Willful blindness is not a defense. Insureds are under a duty to examine their insurance documents and to notify the insurer if there is a discrepancy

between what they initially requested and what the insurer has actually provided. Millhurst Milling & Drying Co. v. Auto. Ins. Co., 31 N.J. Super. 424, 435 (App. Div. 1954). Lynval had an affirmative duty to review his insurance policy obtained from State Farm. The "legislative and regulatory design [behind N.J.S.A. 39:6A-23] 'was to create a milieu in which New Jersey insureds would inform themselves about available coverage from the written notice and buyer's guide and make intelligent choices based on that information . . . .'" Strube, 277 N.J. Super. at 240 (quoting Avery v. Arthur E. Armitage Agency, 242 N.J. Super. 293, 305 (App. Div. 1990)). The insured is expected to act as "a conscientious policyholder, [who] upon receiving the policy, . . . examine[s] the declaration page to assure himself that the coverages and their amounts . . . accord with his understandings of what he is purchasing." Lehrhoff v. Aetna Cas. and Sur. Co., 271 N.J. Super. 340, 346-47 (App. Div. 1994).

Reviewing the facts in the light most favorable to plaintiffs, it is undisputed that a review of the documents would have revealed that State Farm did not provide the coverage Lynval allegedly requested. Lynval had multiple opportunities to correct this alleged error long before the 2014 accident by reviewing the automatic renewal pages and other documents State Farm provided to him. These documents were specifically designed to apprise

13

consumers like Lynval about the content of their insurance policy and the coverages available. Stated differently, Lynval was obligated to alert State Farm of the inconsistencies between what he allegedly requested and what the policy provided. As observed by the Supreme Court, the Legislature intended that N.J.S.A. 17:28-1.9 confer immunity:

> in circumstances relating to an insured's election of UIM coverage when the insured attempts to later shift the blame for a decision to opt for any level of coverage less than the maximum back onto the insurer, as long as the insurer has complied with its obligations to make known the availability of all possible limits as required by the statute.
>
> [Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 268 (2008).]

Here, the first two requirements for immunity under N.J.S.A. 17:28-1.9 have been met. Plaintiffs were provided with the minimum coverage required by law, and defendant has complied with the coverage selection requirements under N.J.S.A. 17:28-1.9(b).

Plaintiffs also argue that State Farm is not immune from liability because its actions were willful, wanton, or grossly negligent because: (1) its agent deliberately completed the coverage selection form with coverages that Lynval did not select; and (2) State Farm did not take measures to determine whether plaintiffs had private health insurance. In response, State Farm argues that the

14

burden is on the insured to provide proof of adequate health insurance. We agree with State Farm's argument.

This court has defined "willful" conduct under N.J.S.A. 17:28-1.9 to refer to a "deliberate or intentional act. An insurer will be held liable for its 'willful' conduct, if it deliberately misrepresents the scope of available coverage in a given policy." Pizzullo v. N.J. Mfrs. Ins. Co., 391 N.J. Super. 113, 125 (App. Div. 2007), rev'd on other grounds, 196 N.J. 251 (2008). Similarly, wanton acts:

> encompass conduct showing an extreme indifference or reckless inattention to material details that result in damages to the insured . . . a wanton act nevertheless connotes an utter disregard for the rudimentary responsibility of providing complete and accurate information to the insured regarding the available coverage under a particular policy of insurance.
>
> [Id. at 125-26.]

Finally, gross negligence includes acts that are a "deviation from the standard of reasonable professional conduct expected from an insurance carrier." Id. at 126. An insured must prove that:

> (1) he or she sustained damages resulting from the election of a given level of coverage; (2) the alleged improper election of coverage was caused by an act of commission or omission by the insurer; and (3) this act of commission or omission was the result of a gross negligence; that is, a high level of incompetence, inattention, or indifference that involves more than simple negligence.

A-4761-15T2

[<u>Id.</u> at 126-27.]

Plaintiffs have not offered any evidence to conclude that State Farm owed a duty to Lynval to affirmatively investigate whether each member of the family had private health insurance. Plaintiff relies on <u>Gallagher v. New England Mut. Life Ins. Co.</u>, 19 N.J. 14, 22 (1955), for the proposition that an insurer has a duty to investigate when information obtained during the application process reveals facts that "seriously impair the value of . . . the application." However, the Court also explained in <u>Gallagher</u> that this duty arises only after an insured fully discloses all facts in an application when such information is requested. <u>Ibid.</u> Furthermore, it is the insured:

> who has the necessary complete knowledge of such facts, and his statements and answers in the application are the determinant qualitative factor in the equation of insurability which the insurer has to resolve before issuing a policy. It is only when the independent investigation of the company discloses sufficient facts to seriously impair the value of this determinant factor that a further duty rests upon the insurer to investigate the statements and admissions in the application.

> [<u>Ibid.</u>]

Thus, the duty to investigate only arises when information is received that would trigger the need for an investigation. Plaintiffs nevertheless argue that the State Farm agent who interacted with Lynval during the initial meeting had

16

the opportunity to ask Lynval to identify the type of health insurance carried by each member of his household. Plaintiffs note that the agent asked Lynval about each potential insured's previous driving history and requested information about each vehicle that would be covered under the policy. The record shows, however, that in response to the agent's request for information about Lynval's health insurance, Lynval presented his private health insurance card. Furthermore, questions about personal health insurance are not among the questions State Farm agents are required to ask potential insureds. At the time plaintiffs acquired the State Farm policy, there was no reasonable basis that would have prompted State Farm to investigate plaintiffs' health insurance status. The State Farm agent did not have a legal obligation to investigate each potential insured's personal health insurance. The Law Division correctly granted State Farm's motion for summary judgment pursuant to the immunity provisions in N.J.S.A. 17:28-1.9.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4761-15T2